**In Re TISCHER**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1186. Decided May 29, 1933

John W. Bricker, Attorney General, Columbus, Hubert A. Estabrook, Dayton, Daniel W. Iddings, Dayton, Sidney C. Kusworm, Special Counsel, Dayton, and Roland McKee, associated with Special Counsel, Dayton, for the Trust Company.

Leglar & Murray, Dayton, for Hazel Tischer.

By KUNKLE, J.

This case comes into this court both upon appeal and upon a proceeding in error. We will consider the case on error. The appeal may be dismissed.

The case was originally brought in the Probate Court of Montgomery County upon exceptions filed by Hazel Tischer to the final account of the Union Trust Company of Dayton, as Trustee under the last will and testament of her father, George W. Tischer, deceased.

The Probate Court, as appears from the record, sustained the exceptions as to branches Nos. 1, 2, 3 and 4 thereof and overruled the same as to branch No. 5.

The Union Trust Company of Dayton, as such Trustee, thereupon perfected an appeal from the judgment of the Probate Court to the Court of Common Pleas of Montgomery County. The Court of Common Pleas of Montgomery County overruled all of the exceptions, whereupon the case is brought to this court for determination.

The Union Trust Company of Dayton, the present Trustee, succeeded The Dayton Savings and Trust Company of Dayton as Trustee of the fund in question. The Dayton Savings and Trust Company was originally named as the Trustee of said fund and in June of 1925 qualified as such trustee in the Probate Court of Montgomery County and assumed to perform the duties of such trustee. In June of 1926 the Dayton Savings and Trust Company filed its first account as such Trustee and charged itself with the principal amount of $6,000 together with income by way of interest received on $5,000 of First Texas Joint Stock Land Bank of Houston 5% bonds at $102.50, also the interest on certain second 4¼% Liberty Loan Bonds. The record shows that the executors, Charles E. Tischer, Raymond L. Tischer and Estella Hoerner approved in writing these investments.

The approval of the Probate Court was not obtained before the investments were made but the account was duly approved by the Probate Court in August of 1926.

In August of 1928, the trustee, The Dayton Savings and Trust Company, filed its second report in which it charged itself with the sale of $850 of second 4¼% Liberty Loan Bonds at $100.80 and also charged itself with interest on the First Texas Joint Stock Land Bank of Houston 5%

bonds together with the Federal Land Bank bonds and among the expenditures showed the purchase of Federal Land Bank 4¼% bonds at $100.75. It appears that prior to the filing of this second account the officer in charge of the trust funds of the Dayton Savings and Trust Company wrote the guardian of Hazel Tischer and explained the nature of the investments which had been made.

This second report was approved by the Probate Court in October of 1928.

The record also discloses that in April of 1930 the Dayton Savings and Trust Company resigned as trustee and on the same day the Union Trust Company applied for appointment and was appointed as such trustee in place of the Dayton Savings and Trust Company. The Dayton Savings and Trust Company resigned because of its business in effect being turned over to the Union Trust Company.

In June of 1930 The Dayton Savings and Trust Company filed its third and final account showing some $89 in cash, $5125 in First Texas Joint Stock Land Bank of Houston 5% bonds and $846 Federal Land Bank of Louisville 4¼% bonds. The above cash and bonds being of the face value of $6060.80. This third and final account was approved by the Probate Court in August of 1930.

The first and final account of the Union Trust Company was filed September 1, 1931 and shows that upon its appointment it received from the Dayton Savings and Trust Company the above mentioned bonds of the First Texas Joint Stock Land Bank of Houston, 5% bonds, and of the Federal Land Bank of Louisville, 4¼% bonds, and the same were retained by it as such trustee without change. The trustee also stated in said first and final account that the trust fund should be distributed as the beneficiary had arrived at the age of majority, that being the time fixed for the termination of the trust.

To this first and final account of the said trustee, The Union Trust Company, Hazel Tischer, the beneficiary under said trust, filed exceptions on September 3, 1931. Said exceptions are as follows:

1. To the item in the first account dated June 27, 1925, showing a disbursement to The Dayton Savings and Trust Company of $5,205.55 for the purchase of $5000.00 First Texas Joint Stock Land Bank of Houston, Texas, 5% bonds, in that said purchase was not authorized by the Probate Court as required by the will and be-

cause said trustee bought said bonds through its own Bond Department presumably at a profit.

2. To the item in the first account dated July 1, 1925, showing a disbursement to The Dayton Savings and Trust Company of $867.16 for the purchase by it of $850.00 Second 4¼% Liberty Loan Bonds, said purchase being made by the trustee from its own Bond Department presumably at a profit.

3. To the item in the second account dated July 1, 1926, showing a receipt of $861.41 from C. F. Childs and Company for the sale of $850.00 Second 4¼% Liberty Loan Bond for the reason that said sale was not authorized by the Probate Court.

4. To the disbursement in the second account dated July 1, 1926, to the N. S. Talbott Company for the purchase of $840.00 Federal Land Bank 4¼% bonds totaling $846.30 for the reason that said purchase was made without the consent of the Probate Court as required by the will.

5. To the item in the fourth account showing a disbursement of $95.04 to The Union Trust Company for trustee's fees for the reason that said trustee is not entitled to compensation on account of misfeasance in the handling of the trust fund.

In brief, it appears from the record that George W. Tischer, a resident of Montgomery County, died testate in December of 1924; that his last will and testament was probated in the Probate Court of Montgomery County, Ohio; that his two sons, Charles E. and Raymond L. Tischer, and his daughter, Estella M. Hoerner, were appointed and qualified as executors and that said executors filed their first and final account in April of 1930; that the account was approved and the executors were discharged.

It also appears from the record that upon the day Hazel Tischer became of age the market value of the bonds in which the funds of the ward were invested had depreciated to such an extent that there was a shrinkage or loss in the then market value of the bonds over the amount that had been paid by the trustees for said bonds in a sum between $2600 and $2700.

Item 2 of the will of George W. Tischer, which relates to the creation and management of the fund in question is as follows:

"ITEM II: I give, devise and bequeath to The Dayton Savings and Trust Company, of Dayton, Ohio, as trustee, the sum of Six Thousand ($6,000.00) Dollars, the same to be held in trust for the benefit of my granddaughter, Hazel Tischer, the daughter of my son, Harry A. Tischer, upon the following conditions, to-wit:

(a) I appoint The Dayton Savings and Trust Company of Dayton, Ohio, as trustee of said Six Thousand ($6,000.00) Dollar fund, and direct that it shall make all reports to, and conduct the trust herein created, under the instructions and authority of the Probate Court of Montgomery County, Ohio.

(b) I direct that said Six Thousand ($6,000.00) Dollar fund shall be invested by the trustee herein in safe securities, of its own choosing, by and with the approval of the Probate Court of Montgomery County, Ohio, and the executors and trustees of my estate hereinafter named. Said trustee shall make said investment so that the same shall be as safe as possible, and yield as great an income as possible.

(d) This trust shall continue until my granddaughter Hazel Tischer becomes twenty-one years of age, at which time said trust shall terminate completely, and the trustee herein is hereby directed at that time, to pay said fund over to my granddaughter, Hazel Tischer, the same to become hers, her heirs and assigns, absolutely and forever."

Under the circumstances disclosed by the record, should the depreciation in the value of the securities so purchased by the trustee fall upon the beneficiary or should the trustee bear such loss?

It will be observed that the exceptions are directed to the first and second accounts of The Dayton Savings and Trust Company, and also to the account of The Union Trust Company insofar as compensation to said trustee is concerned.

The exceptions do not relate to the third and final account of The Dayton Savings and Trust Company, and upon the approval of which account The Dayton Savings and Trust Company was released from the trust and its successor was appointed.

Counsel for the trustee insists that the exceptions to the final account of the present Trustee, viz: The Union Trust Co., cannot be sustained for various reasons, among which are:

(1) That the beneficiary is barred from opening up the accounts of The Dayton Savings and Trust Company.

(2) Both the Dayton Savings and Trust Company and The Union Trust Company have faithfully performed their duties as trustee.

Counsel for exceptor and also for the trustee have favored the court with unusually exhaustive briefs in which the legal questions involved are discussed and the pertinent authorities supporting the respective contentions of counsel are cited and reviewed in considerable detail.

We have considered these briefs of counsel with care, but it would be impractical in this decision to attempt to review all of the many authorities so cited by counsel.

The duty of a trustee is dwelt upon at length in such briefs and the circumstances under which a previous accounting may be opened up are discussed in detail by counsel. A' very interesting review is also contained in the briefs of the controlling authorities in cases where investments were made without the express approval of the Probate Court prior to the making of the investment, but where a report of the trustee is filed showing the nature of the investment of the trust funds and such report is approved by the court.

As above stated, it would be impractical for us in this opinion to attempt to review in detail the authorities upon all the propositions urged in the briefs.

We will assume, for the purposes of this case, that a review of the conduct of the former trustee under the circumstances disclosed by the record, is permissible. Such review under the state of the record here presented is questionable, but without finally determining that question, we shall proceed to a brief discussion of the proposition urged by the trustee, viz: that both The Dayton Savings and Trust Company and the present trustee have faithfully performed their duties as such trustee.

As above recited, the trust instrument in question is as follows:

"I direct said $6,000 fund shall be invested by the trustee in safe securities of its own choosing, by and with the approval of the Probate Court of Montgomery County, Ohio, and the executors and trustees of my estate hereinafter named; said trustee shall make said investment so that the same shall be as safe as possible and yield as great an income as possible."

Sec 11214 GC provides for the investment of trust funds as follows:

"Sec 11214 GC. Investment of trust funds. When they have funds belonging to the trust which are to be invested, executors, administrators, guardians, including guardians of the estate of minors, and trustees, may invest them in bonds or certificates of indebtedness of this state, or the United States, or in bonds or certificates of indebtedness of any county, city, village or school district in this state, on which default has never been made in the payment of interest, or in bonds issued by any bank organized under the provisions of the Act of Congress known as the Federal Farm Loan Act, approved July 17, 1916, and amendments thereto, or in such other securities as the court having control of the administration of the trust approves."

It will be observed that the investments in question were made in compliance with the provisions of the Code of Ohio. The investments as made were in effect approved by the Probate Court by approving the various reports filed by the trustee.

The investments under the provisions of the trust were to be of the choosing of the trustee. Such choosing was confined to the selection of securities which clearly came within the provisions of §11214 GC.

The record does not disclose any wilful misconduct upon the part of either of the trustees. From an examination of the various authorities cited by counsel, we are inclined to the opinion that the failure to secure the express approval of the Probate Court prior to making the investments merely resulted in placing upon the trustee the burden of showing that the investments were made in pursuance with the provisions of law and that it was guilty of no injudicious conduct in making such investments.

We cannot escape the conclusion that the record supports the trustee in these respects.

Many authorities are cited at length in the briefs of counsel upon this subject. Among them are a few pertinent cases, such as the decision of the Court of Appeals of Hamilton County in the case of Bonding Company v Bank, 22 O.C.C. (N.S.) 177. The second paragraph of the syllabus is as follows:

"Where a trustee purchases with funds in his hands bonds constituting the highest form of investment known to the law, and the investment is reported to the court in his account which is affirmed in due course, such confirmation operates as an approval of the investment as fully as though a prior formal order had been made."

In the case of Estate of Rebecca Cridland, deceased, 132 Pennsylvania 479, the

syllabus is as follows:

"(a) By a will, directing the conversion of a residuary estate, it was provided that it should be invested in productive real estate, well secured ground-rents, mortgages, etc., after approval thereof on prior application to the Orphans' Court having jurisdiction of the accounts.

(b) Under the advice of counsel, the trust estate was invested in United States bonds, payable at the option of the government at the end of five years, but not at the pleasure of the holder until the end of twenty years. For these bonds a premium was paid.

(c) At the time the purchase was made it was believed by capitalists that the option of the government would not be exercised; but at the end of five years the bonds were called in and paid off by the government at their par value.

1. In such case, it was not error, on the adjudication of the trustee's accounts, to refuse to surcharge with the amount of the principal alleged to have been lost by the investment in the bonds at a premium, although the investment had been made without previous application to the Orphans' Court.

2. The only effect of the failure to first obtain the approval of the Orphans' Court, was to throw upon the trustee the burden of showing that the investment was such as the law permitted, and that in the light of existing circumstances there was no imprudence in making it; this has been shown beyond question: Per Penrose, J."

Without further citing authorities we are of opinion that under the circumstances disclosed by the record the investment by the trustee of the funds in securities authorized by §11214 GC, relieves it from liability for the depreciation, under the existing unusual circumstances, in the securities in which such funds were so invested.

The judgment of the lower court will, therefore, be affirmed.

HORNBECK, PJ, and BARNES, J, concur.