## CONOVER, TRUSTEESHIP OF, In Re

Ohio Probate Court, Montgomery Co

Decided Sept 9, 1933

Harry N. Routzohn, Dayton, for exceptors.

Hubert A. Estabrook, Dayton, D. W. Iddings, Dayton, Sidney G. Kusworm, Dayton, and Rowland H. McKee, special counsel, Dayton, for the Attorney General on behalf of Ira J. Fulton.

## OPINION

By WISEMAN, J.

On the third day of January, 1930, The Dayton Savings & Trust Company of Dayton, Ohio, was appointed trustee under the last will and testament of Adams J. Conover, deceased. The testator established the trust for the use and benefit of his widow, Anna Eliza Conover, during her life, and upon her decease for the benefit of his daughter, Mabel C. McHenry, and after her decease the trust is to be terminated and the estate divided between the two sons of Mabel C. McHenry, to-wit: Adams C. McHenry and Eugene C. McHenry. The widow, Anna Eliza Conover, died on August 16, 1931.

On the 10th day of March, 1930, The

Dayton Savings & Trust Company and The City National Bank & Trust Company effected a consolidation which brought about the organization of The Union Trust Company, which took over all the assets and assumed all the liabilities of the two former banks. On the 31st day of March, 1930, The Dayton Savings & Trust Company resigned as trustee because of the consolidation which was effected, and on that date The Union Trust Company was appointed successor trustee. On the 2nd day of June, 1930, The Dayton Savings & Trust Company filed its first and final account as trustee and transferred the entire assets in the trust fund to the successor trustee, The Union Trust Company. This account was formally settled by the court and the transfer of the funds was approved.

On the 16th day of January, 1931, the trustee, The Union Trust Company, filed its first account which was duly settled by the court, no exceptions having been filed thereto. On the 31st day of October, 1931, The Union Trust Company was closed by order of Ira J. Fulton, superintendent of banks, of the state of Ohio, and since that date said institution has been in liquidation under the direction of the superintendent of banks of the state of Ohio.

On the 6th day of January, 1932, The Union Trust Company, through the superintendent of banks, filed its second and final account, tendered its resignation and transferred all the assets in the trust to the Winters National Bank & Trust Company, which was appointed successor trustee.

To this second and final account of The Union Trust Company, Mabel C. McHenry, Adams C. McHenry and Eugene C. McHenry, the beneficiaries of the trust, have filed their exceptions, in which they charge that The Union Trust Company committed a breach of trust in that it failed to comply with the terms of the will which prescribed the character of investments to be made by the trustee, by selling stock held by the trustee and in turn investing the proceeds in stock not permitted by the terms of the will, or the statutes on investments. Exceptions are taken to the account on the ground that the trustee was grossly negligent in retaining certain stocks and securities in face of a general decline in their market value, and that by reason thereof such stocks and securities have become of comparatively little value to the estate.

The exceptors also contend that the trustee was guilty of a breach of trust

in surrendering 125 shares of the capital stock of The Dayton Savings & Trust Company and taking in lieu thereof 625 shares of the capital stock of The Union Trust Company, which finally resulted in a total loss to the estate and in addition thereto the possibility of the trust fund suffering the payment of a double liability on such bank stock.

At the time The Union Trust Company was appointed trustee, the trust estate consisted mostly of securities in the form of industrial and public utility stock, federal land bank bonds and stock in The Dayton Savings & Trust Company.

The Union Trust Company, prior to filing its first account, sold certain of the securities and with the proceeds purchased stock in other public utility and industrial companies. The first account of The Union Trust Company listed all the securities held by the trustee at that time. A close examination of this account discloses that a change in the investment had taken place since it had received the assets from the former trustee. At no time did the trustee, however, obtain an order of court or seek the court's approval to invest trust funds in securities of any character, or exchange any of the securities held by it in trust.

The evidence in this case also discloses that after the appointment of The Dayton Savings & Trust Company, as trustee, and prior to the filing of its final account, The Dayton Savings & Trust Company, acting as trustee, surrendered 125 shares of the capital stock in The Dayton Savings & Trust Company and accepted in lieu thereof 625 shares of the capital stock in The Union Trust Company. At no time did the trustee, The Dayton Savings & Trust Company, seek the approval of the court in entering into this transaction.

It is contended, on behalf of the trustee, The Union Trust Company, that the exceptors by filing exceptions to the second and final account, can not open up the first account of The Union Trust Company, nor the final account of The Dayton Savings & Trust Company. The court is of the opinion that §11033, GC, which permits the court to open up all former accounts to correct a mistake, or error, was passed by the legislature to meet just such a situation which is presented in the case at bar. The prior accounts were formally approved by the court, without exceptions being filed thereto, and inasmuch as the court has never had a hearing upon the matter, the exceptors in filing exceptions to the second and

final account can now open up all prior accounts for the purpose of having the court determine matters with reference to the investment of trust funds. **Watts v Watts, 38 Oh St 480; Lambright v Lambright, 74 Oh St 198; In Re Couden, 9 Oh Ap 207.**

The trustee, in making investments of trust funds, must be governed by the terms of the will if the testator has given instructions in regard to such matters. This principle of law is so elementary that the court need not refer to the wealth of authorities to sustain it. Perry on Trusts, 6th Edition, Par. 452-460; see also §710-164, GC.

In Item Five of his will, the testator gave the trustee power "to manage the said estate or trust property with full power and authority in their discretion and in the same manner and to the same extent as I could do if living." The testator then provides in detail the powers and authority of the trustee with respect to matters which may arise in the administration of the affairs of the trust, at the end of which the testator empowers the trustee "to invest or reinvest in such securities or properties as are legal investments in savings bank funds in the state of Ohio."

It is urged on behalf of the trustee that this provision in the will gave unlimited and absolute authority to invest the trust funds in securities of its own choosing. Such a construction would completely ignore the words of the testator wherein he restricted investments to those which are legal investments for savings banks in the state of Ohio. The cardinal rule in such matters is to ascertain the intention of the testator and to give effect to such intention, which is gathered from the four corners of the will.

The court in construing the will must give effect to every provision contained therein if it is possible to reconcile what appears to be inconsistent provisions. The court is of the opinion that the two statements quoted from the will are not inconsistent and easily reconcilable. It appears from the evidence that the testator was a banker of wide experience. In fact he was the organizer of The Dayton Savings & Trust Company and acted as president of such institution for many years. He certainly was conversant with the character of securities which savings banks were permitted to purchase, under the Ohio law, and wished to throw this protection around the trust fund which he had created by his own act.

The court is forced to the conclusion that the testator intended to give the trustee absolute authority to manage the trust within certain prescribed limitations.

With reference to the power of investments the trustee had authority to make said investments without seeking the approval of the court, or the beneficiaries, so long as it acted within the limits of the powers conferred and restricted the investments to those which are made legal investments for savings banks in the state of Ohio.

The law relating to investments by savings banks is set forth in §§710-111, 710-139, 710-140, 710-140 (a), GC. Before an investment can be made in industrial or public utility stocks by savings banks, it must first be shown that "dividends have been earned and paid for five consecutive years next prior to the investment" and "such investment shall be authorized by an affirmative vote of a majority of the board of directors of such savings bank." §710-140 (b), GC.

The evidence in this case shows that in making the investments complained of there was no effort made by the trustee to comply with the requirements of this statute. This same §710-140 (b), GC, further provides that "No purchase or investment shall be made in the stock of any other corporation organized or doing business under the provisions of this act or of the national banking act of the United States." By virtue of the provisions of this section of the statute, no savings bank is permitted to invest funds in the capital stock of any other bank, and, consequently, the trustee herein was forbidden to invest trust funds in the capital stock of any bank.

The exceptors contend that the trustee committed a breach of trust in surrendering 125 shares of capital stock in The Dayton Savings & Trust Company and taking in lieu thereof 625 shares of capital stock in the Union Trust Company. The trustee contends that the acquisition of the stock of The Union Trust Company did not constitute an investment, or a reinvestment, for the reason that the stock in the new corporation retained its substantial identity with that of the stock of the old company.

The evidence in the case bearing upon the transaction between The Dayton Savings & Trust Company and The City National Bank & Trust Company out of which there was created a new banking

institution, the Union Trust Company, clearly and definitely shows that a consolidation was effected. The court wishes to quote from several opinions relative to the legal effect of the consolidation of two corporate bodies and the organization of a new corporation. In the case of So. Ill. Gas Company v Commerce Commission. 311 Ill. 299; 142 NE 500 it is held that:

"The effect of the consolidation of two or more corporations is to dissolve the original corporation and to create a new one."

In the case of Osgood v Tax Commissioners, 235 Mass. 88 it was held that:
"Although the property owned by a new corporation was identical with that owned by the old transferring the property to it, the two nevertheless were different legal entities."

In the case of the Union Indemnity Company v Railroad Commission, 187 Wis. 528, it was held that:
"A merger exists where one corporation remains in being and merges in itself one or more other corporations; but the effect of consolidation is to work a dissolution of the corporations consolidated and to create a new one out of the elements of the former corporations."

See also Ala. T. & N. Ry. Co. v Tolman, 200 Ala. 449; 76 So. 381, 384.

Counsel for the trustee has made reference to this court's decision in the George W Tischer Trusteeship case, in which the court fixed a liability on The Union Trust Company for a breach of trust committed by a former trustee, the Dayton Savings & Trust Company, for the reason that in the consolidation the new corporation succeeds to all the assets of the old, and also assumes all the burdens and obligations of the old. The court found in that case that by reason of the consolidation there was a succession of interest from the old Dayton Savings & Trust Company to The Union Trust Company, which would impose a liability on the new corporation for any breach committed by the old corporation.

The case at bar is clearly distinguishable as the question now before the court is one of investment. The court must determine whether the holding of stock in the old bank, The Dayton Savings & Trust Company, is the same investment as the holding of stock in the new bank, The Union Trust Company. As to the question of liability, this court again holds as it did in

the Tischer case, that The Union Trust Company, by virtue of the consolidation of the two old banks, and the creation of the new institution, is now liable for any breach of trust committed by The Dayton Savings & Trust Company. This principle of law is declared for the protection of the rights of parties who may otherwise be prejudiced by a consolidation. In the Tischer case, this court did not hold that the transaction of consolidation was a mere fiction, but did hold that a creditor of the old banking institution could pursue the new corporation in an attempt to fix the liability for any breach of trust.

The evidence in this case bearing upon the nature of the transaction which we choose to call a "consolidation," discloses that on March 31, 1930, The Dayton Savings & Trust Company filed its resignation with the court in which a statement appears as follows:

"By reason of the consolidation of the assets and business of The City National Bank & Trust Co. of Dayton, and The Dayton Savings & Trust Co. and the formation of The Union Trust Co. of Dayton, as the successor to said banks, said banks will liquidate and their corporate existence will be terminated."

There was also introduced into the evidence (Trustee's Exhibit No. 5) a printed pamphlet which contains what those in charge of the reorganization of the banks were pleased to designate as a "Plan for the consolidation of the assets and business" of the two old banking organizations. A copy of reorganization agreement is set forth in this pamphlet which clearly proves that a consolidation was effected.

In the reorganization agreement provision was made whereby those stockholders who refused to participate would receive a cash distribution for their stock. The trustee in surrendering the stock in the old company and taking in lieu thereof stock in the new company, which was a separate and distinct corporate entity, engaged in a transaction which constituted an investment or reinvestment of trust funds in bank stock which was not permitted under the terms of the will, or under the law, which prescribes the character of securities in which savings banks may invest those funds. The court holds that in legal effect the surrendering of the bank stock in the old bank and taking in lieu thereof bank stock in the new bank, such transaction takes

on the character of a repurchase of securities or a reinvestment of trust funds. Therefore, in accepting stock in The Union Trust Company, the trustee herein committed a breach of trust.

In addition to the transaction wherein the trustee surrendered stock in The Dayton Savings & Trust Company and accepted stock in The Union Trust Company, the trustee engaged in three other transactions of a similar nature, to-wit:

1. In surrendering 25 shares of stock in the Central West Power Company and accepting in lieu thereof 25 shares of stock in the Southeastern Indiana Power Company which transaction occurred on or about July 23, 1931;

2. In surrendering 100 shares of stock in the Pennsylvania Ohio Power Company and accepting in lieu thereof 100 shares of stock in the Ohio Edison Company, which transaction took place on or about July 1, 1930;

3. In surrendering twenty shares of preferred stock in the Miller Rubber Company and accepting in lieu thereof twenty shares of common stock in the B. F. Goodrich Company, which transaction took place in April or May, 1930.

The court has reviewed the evidence with respect to the character of these three transactions and does not find any change of circumstances which would justify the application of any principle of law different from that applied in the bank stock transaction. In all of these transactions wherein a reorganization scheme was formulated, which in two instances constituted a consolidation, and in the other two a reorganization, more in the nature of a merger being effected, provision was made for all dissenting stockholders to accept cash on a given basis rather than stock in a new and different corporate entity. The act of the trustee in accepting stock in a new or different enterprise constituted a reinvestment within the meaning of the law and in so doing committed a breach of trust and any loss occurring to the trust estate by reason thereof must be borne by the trustee.

In these four transactions, the trustee will be required to account for the best market price which could have been realized at the time of the disposition of the stock which was first held by the trustee, together with simple legal interest thereon.

The fact that these investments were made in violation of the terms of the will, and the law of Ohio, was reflected in previous accounts, which were not excepted to, and which were formally approved by the court, does not operate as a bar against the right of the cestui que trust and remaindermen filing exceptions to the last account which also sets forth these same investments. If the evidence were construed most favorable to the trustee it would show that the beneficiaries maintained a discreet silence. In order to work an estoppel it would have been incumbent on the trustee to show by the evidence that the beneficiaries had full and complete knowledge of the transaction complained of and that having such knowledge they acquiesced therein. Perry on Trusts, 6 Ed. Par. 467; See also 26 Ruling Case Law, §165.

The evidence in this case does not show facts sufficient for the court to hold that the beneficiaries in any way acquiesced or approved of the wrongful acts committed by the trustee. On the other hand there is some evidence indicating that the beneficiaries registered a protest with reference to the manner in which the trust was being administered.

In formally approving the accounts, the court did not pass upon the question of investments. The approval of the court with reference to making investments was never sought by the trustee, neither was the court's approval required as the trustee was given ample authority in the will to make investments within certain prescribed limitations. It can not be successfully contended that the trustee should be relieved from liability simply because the court approved the account. If a breach of trust was committed it happened some time prior to the filing of the account. No act of the court in approving the account would have the legal effect of validating an invalid act of the trustee and relieving it from liability for a breach of trust to the cestui que trust.

Counsel for the trustee again cites the law laid down in the George W. Tischer Trusteeship, 46 Oh Ap 405 (15 Abs 54), in which the Court of Appeals held that the Probate Court in approving the account wherein the new investments were set forth, operated as an approval of the investments. In the Tischer case, the wrongful act of the trustee complained of was its failure to secure the approval of the court in making investments as required by the terms of the will. The holding of

the court was to the effect that the requirements of the will were sufficiently complied with when the court approved the account, and especially since the investments made by the trustee were such as were permitted by the statute. In the case at bar, the act complained of is not the failure on the part of the trustee to first secure the approval of the court in making investments, therefore, even though the court did approve the accounts, such approval does not operate in such a way as to make legal an illegal act committed by a trustee in making investments beyond the limitations prescribed in the will and outlined in the statutes of Ohio, with reference to legal investments to be made by savings banks. In the Tischer case, the trustee invested in those securities which are set forth in the statutory law of Ohio as legal investments. A trustee who violates the terms of the will in making investments but nevertheless makes investments in what is termed legal securities, is protected in most jurisdictions against loss simply because it has failed to comply with a technical requirement. On the other hand the courts in most jurisdictions hold that a trustee is not protected from liability in making investments in violation of the terms of the will if the trustee chooses to invest trust funds in those securities which are not considered legal securities under the law. In such case the trustee makes the investment at its own peril. In this case the trustee must bear its own burdens and responsibilities. The trustee herein in the administration of the trust enjoyed rather wide discretionary powers and likewise must assume the added duty and responsibility which accompany the delegation of such powers. In the case at bar the securities purchased by the trustee are such as are expressly forbidden to be purchased, such as bank stock, or are not permitted to be purchased unless the investing power fulfills certain definite requirements with which the trustee herein did not comply. The failure of the trustee to comply with the terms of the will in making investments and the statutory law applicable thereto is assigned as the direct cause of the loss sustained to the beneficiaries. The terms of the will and the statutory requirements furnished an adequate check on the conduct of the trustee in making investments, which would have prevented the loss which has occurred. The trustee committed a breach of trust in this regard and will be held liable for the loss which has occurred to the beneficiaries.

The exceptors also contend that the trustee was grossly negligent in the performance of its duties and did not exercise the degree of care, prudence and diligence required of fiduciaries in the handling of trust funds in that it retained in said trust estate throughout a general depreciation of the market value thereof and until they became of comparatively little value to said estate, numerous securities which are still in the possession of the trustee as part of the trust estate.

The law requires the trustee to exercise that degree of care and prudence in the management of the affairs of the trust as a man of ordinary prudence would exercise in caring for his own property. On this proposition of law the court wishes to quote from Perry on Trusts, 7 Ed. §441:

"A trustee must use the same care for the safety of the trust fund, and for the interests of the cestui que trust, that he uses for his own property and interest." * * * (See citations in foot-note).

"A trustee must in all events, use such care as a man of ordinary prudence uses in his own business of a similar nature." (See also 26 Ruling Case Law §130).

It is true that a general decline in market value of securities prevailed for several years previous to filing the last account, which decline in market values has brought about a tremendous shrinkage in the value of the estate. The trustee is not liable simply because this shrinkage occurred. The trustee is only liable for the loss to the trust fund when in the exercise of ordinary prudence it could or should have taken the necessary steps to prevent the loss.

What did the trustee fail to do which is alleged to be a breach of trust? The answer is that it failed to sell on a rapidly declining market numerous securities for which no ready or active market could be found. In failing to sell these securities the trustee simply failed to do what practically all trustees and fiduciaries and private individuals in general failed to do during the last several years. That this country and the whole civilized world was caught in an economic maelstrom of unprecedented dimensions which has either wrecked or seriously affected almost every line of business in the country, and in fact threatened the structure of government itself, is a fact so well known to all that

little evidence on this point would suffice to convince the court that the situation was so unusual and the financial and business world was in such a state of confusion that no trustee, as a matter of law, should be held responsible for a depreciation in the value of securities, simply because it pursued a "watchful waiting" policy which was the course of action followed by the owners of stock in general throughout the country.

This court is ready to announce that it will not hold any fiduciary responsible for a depreciated value of the ▮▮▮▮▮ trust estate due to general decline in market values of securities during the last several years if the liability of the trustee is sought to be fixed on the sole ground that the trustee failed to sell securities on a declining market. However, if the fiduciary is in possession of facts and circumstances which would reflect unfavorably on the financial stability of any company which would unduly increase the hazard of retaining ▮▮▮▮▮ such securities, the fiduciary in failing to dispose of such securities in face of facts which would lead a person of ordinary prudence in protecting and preserving his own estate, to sell, would be liable for any loss which is suffered by the estate by reason of the failure of the fiduciary to sell. Perry on Trusts, 7 Ed. §465.

In the application of this principle of law to the facts in this case relative to the retention by the trustee of The Union Trust Company stock in face of facts peculiarly known to the members of the board of directors and officers of the bank, which information reflected the financial instability of The Union Trust Company, and which made the retention of its bank stock by itself, as trustee, an extremely hazardous policy to pursue, the court would not hesitate to fix a liability against the trustee for loss due to the failure of the bank had the court found that the investment in stock in the Union Trust Company in the first instance was legal.

After reviewing the record in this case which discloses very clearly and definitely that almost from the date of its organization The Union Trust Company was gradually growing weaker and especially during the last six months presenting to its board such a weak financial condition which aroused the anxiety of the officers and members of the board to take definite action to place the institution on a sound financial basis and such effort at no time

checking the gradual disintegration of the institution which was headed toward a certain failure, no court would hesitate to declare very promptly that the trustee, had it exercised proper care for the preservation and protection of the trust estate, would have at a very early date disposed of such bank stock and would hold that a failure of the trustee so to do would constitute a breach of trust for which the trustee would be liable.

The evidence in this case shows that the members of the board of directors of The Union Trust Company gave little or no consideration to the trust department of the bank. It was not until August 7, 1931, that the board of directors were sufficiently concerned in regard to the trust department of the bank to appoint a committee from the board to meet in conjunction with the trust department and pass upon various trust problems. It will be observed that this action was taken less than three months prior to the bank's failure.

The evidence further discloses that some time in the early part of the year 1931 the trust department officials saw fit to subscribe for what is called "Moody's Trust and Estate Service" whereby they were able to secure the advice of experts relative to the stability of certain investments and securities and also advice with reference to conversion of securities held by it for investing of funds in new securities. In response to an inquiry on the part of the trust department, Moody recommended on May 19, 1931, that it should dispose of all bank stocks inasmuch as banks were failing rapidly all over the country, and that runs were being made upon banks which caused them to fail within a very short period of time and that the holding of bank stock, to which was attached a double liability, was an extremely hazardous undertaking. When this recommendation was presented to the board of directors of the Union Trust Company, this board agreed with Moody to sell all out of town bank stocks, but recommended the holding of local bank stock. As a consequence the trustee herein continued to retain The Union Trust Bank stock against the advice of Moody. The trustee at all ▮▮▮▮▮ times had a duty to perform to the beneficiaries of the trust which is to manage and control the affairs of the trust in such a way that the trust fund will at all times be amply protected and preserved for the benefit of the cestui que trust. The trustee herein acting through its board of directors evidenced so

192

little concern for the manner in which the affairs of the trust were being administered. that this court can not help but hold that the trusee herein, The Union Trust Company, was grossly negligent and careless in the management and control of the Conover Trust Fund, and failed grieviously in the preservation and protection of that fund for the benefit of the cestui que trust by retaining The Union Trust Company bank stock, to which was attached a double liability. during a period of time when the bank directors either knew, or should have known, of facts which indicated the rapid approach of the failure of the bank. Any person in possession of such facts and in the exercise of ordinary care, in the protection of his own estate, most certainly would have sold such bank stock on the open market soon after the consolidiation was effected.

This court does not wish to be too sharp in its criticism of the acts of fiduciaries in general, but all fiduciaries must be held to a strict accountability when they are grossly negligent and careless, regardless of whether these fiduciaries be trust companies or individuals. In the case of trust companies, the board of directors, which is the governing and responsible body of the institution, in the future must evidence more concern and give more time to the manner in which their trust departments are being operated in order to prevent the occurrence such as has happened in the Conover Estate.

The exceptors contend that since a double liability has been declared upon bank stock held by the trustee, by reason of the failure of The Union Trust Company, that therefore the trustee should be charged with the amount of such double liability and be bound thereby, unless the Common Pleas Court in which the litigation is now pending holds against the enforcement of such double liability. This court is of the opinion that since the court has found that the acceptance of stock in The Union Trust Company constituted an illegal investment, the trust estate should not be bound to pay double liability on such bank stock and therefore at this juncture in the case this court makes no finding against the trustee on this exception. In the event that it is finally determined that a double liability payment must be paid out of the assets of the trust, the court will make such order at that time as it deems proper.

In conclusion this court holds:

1. That under the law of Ohio the exceptors in filing exceptions to the second and final report of The Union Trust Company can open up previous accounts to have a judicial determination with reference to the act of the trustee in making illegal investments.

2. That in construing the will of the decedent the trustee is limited in its authority to make investments in such securities as are permitted to be made by savings banks in the state of Ohio.

3. That the trustee in accepting stock in public utility and industrial concerns as well as bank stock in The Union Trust Company engaged in a transaction which constituted a reinvestment of trust funds.

4. That the trustee in the investment of trust funds in stock of public utility and industrial concerns, and also in the bank stock of The Union Trust Company, in violation of the terms of the will and the law of Ohio applicable thereto, committed a breach of trust.

5. That the exceptors are not barred to raise the question of illegal investments on exceptions filed to the second account, even though such investments may have been reflected in the list of securities attached to previous accounts which were formally approved by the court, no exceptions having been filed thereto; that no evidence has been introduced showing an acquiescence on the part of the beneficiaries, or any acts on their part which would work an estoppel on the beneficiaries to raise the question of illegal investments.

6. That the trustee is liable to account for the market price of the stock disposed of at the time the illegal investments were made, together with simple legal interest thereon.

7. That the trustee will not be held liable for its failure to sell on a declining market securities held by it unless it was in possession of facts and circumstances which would require a person in the exercise of ordinary care in the protection and preservation of his own estate to sell said securities, which the court finds has not been shown by the evidence, except with reference to The Union Trust Company Bank stock.

8. That the trustee should not be charged with the amount of double liability on The Union Trust Bank stock for the reason that the court holds that the acceptance of such stock in the first instance was illegal and therefore no double liability against the trust fund should attach.

9. That the trustee is directed to file an amended second and final account within ten days.