## WARNER et v HOFFMAN

Ohio Appeals, 2nd Dist, Montgomery Co

No 1257.   Decided Dec 27, 1934

John W. Bricker, Atty. General, by Herbert D. Mills, Dayton, and Robert N. Brumbaugh, Dayton, for Paul A. Warner, Supt.
Heald, Zimmerman, Clark & Machle, Dayton, for C. D. Hoffman, Guardian.

## OPINION

By THE COURT

We re-state the dates which are of importance. The Guardian was apopinted prior to June 18, 1928 and on and prior to that date had in his possession moneys belonging to his trust.

June 18, 1928 he made a deposit for which he was issued a certificate of deposit with the Company in his name as Guardian. The deposit was increased and decreased from time to time. Thereafter four accounts were filed by the Guardian showing the kind and amount of the deposit of the Guardian with the Company. These accounts were settled and confirmed by the Probate Judge.

June 30, 1930, the special deposit was transferred to a certificate for running stock, which was carried in the name of the Guardian. May 11, 1931, the Company under its constitution and by-laws required its depositors and certificate holders to give notice as a prerequisite to withdrawing any of their funds.

January 1, 1932, §10506-41 GC became effective and §11214 GC was repealed.

March 4, 1932, the Guardian filed his fifth account setting forth among investments "Miami Savings and Loan Co. running stock No. 12493, $5,930.27", which account was settled by the Probate Court of date May 14, 1932. Thereafter on April 18, 1933, the Superintendent took over the Company for liquidation.

Sec 11214 GC, so far as pertinent reads:
"When they have funds belonging to the trust which are to be invested, executors, administrators, guardians, including guardians of the estate of minors, and trustees, may invest them" (then follow certain specific forms of investment) "or in such other securities as the court having control of the administration of the trust approves."

Sec 10506-41 GC, so far as pertinent reads:
"Except as may be otherwise provided by law or by the instrument creating the trust, a fiduciary having funds belonging to the trust which are to be invested may invest them in the following:" (then follow spe-

cific forms of investment in sub-divisions A to F, inclusive.) "Provided that no fiduciary shall have authority to invest funds belonging to the estate except with the approval of the court or where the will or other instrument creating the trust permits."

Sec 10506-45 GC provides:
"Immediately after his appointment and throughout the administration of the trust, every fiduciary shall be required to deposit all funds received by him, in his name as such fiduciary in one or more depositories." (Then follow the designated depositories).

Sec 10506-46 GC provides:
"A fiduciary who has funds belonging to the trust not required for current expenditures shall, unless otherwise ordered by the Probate Court, invest or deposit such funds according to law, within a reasonable time, and on failure so to do, such fiduciary shall account to the trust for such loss of interest as may be found by the court to be due to his negligence."

It will be observed that by the terms of §11214 GC the original investment would be included in the language of the statute "other securities", and that the Guardian was authorized to invest in them only upon the approval of the Probate Court. Was the settlement of the accounts of the Guardian, showing the nature and extent of his investment with the Company, prior to his last account, an approval by the court of his deposits with the Company?
We are cited by respective counsel to **Strong v Strauss, 40 Oh St, 87; Mook v The Akron Savings & Loan Co., 87 Oh St, 273; In Re Tischer, 30 N.P. (N.S.) 419, 15 Abs 54; American Bonding Co. v Second National Bank et, 22 O.C.C., 177; In Re Trusteeship of Couden, 9 Oh Ap, 207.**
In Re Tischer, supra, was considered by this court on error. We affirmed the judgment of the trial court as reported in 30 N.P. (N.S.) 419. In this case the trustee was named by will, by the terms of which the trustee was directed to:

"invest the funds in safe securities of its own choosing, by and with the approval of the Probate Court of Montgomery County, Ohio, and the executors and trustees of my estate hereinafter named; said trustee shall make said investment so that the same shall be as safe as possible and yield as great an income as possible."

The trustee purchased certain bonds of The First Texas Stock Land Bank of Houston, which purchase, when made, was approved by the executors but not authorized by the Probate Court. The bonds depreciated in market value. The investment in the bonds was set forth by the trustee in its accounts, which accounts were settled and confirmed by the Probate Court. We cited with approval Bonding Company v Bank, supra, and affirmed the trial court, which held that the approval by the Probate Court of the accounts of the trustee was equivalent to an approval of that court of the investment as originally made. In Bonding Company v Bank, supra, the court held:

"Where a trustee purchases with funds in his hands bonds constituting the highest form of investment known to the law, and and the investment is reported to the court in his account which is confirmed in due course, such confirmation operates as an approval of the investment as fully as though a prior formal order had been made."

It is urged that there is distinction between this case and the instant case in that the form of investment which the court in the cited case held to be authorized was the highest form of investment known to the law, whereas in this case the class of investment is of a lower type. We fail to mark this distinction. The principle determined in the cited case and in the Tischer case is that the settlement and confirmation of the account setting forth the investment constitutes an approval by the court of the investment by the fiduciary as fully and completely as though such approval had been made at a time prior to the investment. Counsel for the Guardian also cite the Bonding Company case wherein it was held that the trustee had no authority to sell certain bonds held by him and that the bank making purchase of the bonds with knowledge that they were held in trust would be liable for conversion of the proceeds though it paid full value for the bonds and was in no way in collusion with the trustee in his breach of trust.
So, in this case, if the Probate Court had not approved the deposits made by the Guardian they would have been unauthorized investments and the Company taking the funds of the Guardian, with knowledge of their trust character, would be charge-

able therewith as co-trustee with the Guardian who would have breached his trust in so investing his funds. In Re Trusteeship of Couden, supra, is cited, wherein upon exceptions to the eighth account of a trustee under a will, the court held that prior accounts could be opened up. This determination was made because the fiduciary was found to have acted in bad faith in making the investment under consideration. Bad faith, mistake and error in accounting were statutory causes authorizing the Probate Court to so act. Strong v Strauss, supra, and Mook v Akron Savings & Loan Company, supra, both treat of investments made by the fiduciary without authority and in which the party who contracted with the fiduciary had knowledge of the trust character of the funds which was paid to them by the fiduciary. In both instances those who dealt with the fiduciary were put upon notice that the transactions to which they were parties were against the interests of the wards. The deposits of the Guardian with the Company in the instant case were, on and after the approval of the accounts of the Guardian, authorized investments.

### FRAUD OF COMPANY

The trial court in this case held that because the Guardian had filed an account in which there was set up the certificate number of the stock held with the Company and the amount thereof the Guardian could not be heard to say that he did not know the nature of the investment which he held with the Company. This conclusion seems inevitable because it was the basis of the Guardian's claim of fraud that he had of date June 30, 1930 been induced to accept a type of investment other than he had with the Company prior thereto and that he had no knowledge that a change of investment was being made. We can understand that the Guardian may have depended upon some clerk to secure the detailed information when filing his account but he cannot be heard to deny his knowledge of the class of security therein appearing.

### ILLEGALITY OF INVESTMENT IN STOCK

Under §11214 GC the investment of the Guardian with the Company of date June 30, 1930 was proper if authorized by the Probate Judge. When the new law became effective the investment of the Guardian had theretofore been made. The account of the Guardian was filed after the effective date of §10506-41 GC and the investment as made was approved by the settlement of the account of the Guardian. It is the contention of counsel for the Guardian that the court was without authority to approve such type of investment on and after January 1, 1932, and could not legally approve such investment made prior thereto. In our judgment the Probate Court had the right though subsequent to the date when §10506-41 GC became effective to approve an investment made at any time prior to the effective date of the statute and that the action in approving the account of the Guardian showing the character of the investment was tantamount to an approval as of the date when made.

Secs 10506-41 and 10506-46 GC in terms speak of the Guardian "having funds belonging to the trust which are to be invested" or "funds belonging to the trust not required for current expenditures." The certificate of stock which the Guardian held with the Company was not funds belonging to the trust but a definite type of security. Suppose that §10506-41 GC did not authorize loans on first mortgage real estate security but that the Guardian held a note secured by a first mortgage on real estate in conformity to §11214 GC, not due for two years after the effective date of the new statute. Would the Guardian be required to collect and the debtor to pay this note before due? We believe not.

The statute, §10506-41 GC was enacted without reference to investments which had been lawfully made prior thereto and by which, under contract, the rights of a fiduciary and those with whom he dealt had been fixed. So with the security which the Guardian held with the Company, being legal when made by virtue of the approval of the Probate Court, the status of the parties to the investment was fixed. The Guardian, holding the same type of security as others, could not be heard to urge that he was entitled to a preference over them. Both the Guardian and the Company acted at their own risk when they dealt with each other respecting the stock but when the Probate Court approved the investment their rights were fixed. The fact that on and after January 1, 1932 such investment would not be regular or authorized affected not at all its legality as of date June 1, 1930. Construction should not be put upon the statute, the effect of which would be to change the terms of contracts

entered into by fiduciaries, which it was within their authority to negotiate.

The interpretation which we place upon the statutes under consideration avoids any question of their unconstitutionality because of their retroactive effect upon contracts entered into within the terms of §11214 GC.

We are cited to a number of cases which in situations analogous to those found here it has been held that the fiduciary was not liable for a breach of his trust and that unless the Guardian in this case could be so held, the Company could not be made the co-trustee with the Guardian of the fund. We will not discuss the cited cases but direct attention only to the early case of **Woodmansie v Woodmansie, 32 Oh St, 18** wherein it is stated in the second syllabus:

"Under the provisions of said §31 (Guardian Act of April 12, 1858) every settlement so made by a guardian is final between the guardian and ward unless an appeal is taken therefrom or the settlement is open, in accordance with the provisions of the section."

This establishes a principle upon which the Guardian in the instant case would be freed from any liability on his bond to his ward for a breach of trust in making the investment here under consideration with the Company. This case comes into this court on appeal and no claim is made or showing offered which would indicate any infirmity in the settlement of the fifth account of the guardian under any of the exceptions of **§10506-40 GC.**

For the reasons herein stated, we are of opinion that the Guardian is not entitled to a preferential claim against the Superintendent and it will be so ordered.

HORNBECK, PJ, and BARNES, J, concur.