MARKS, GDN., APPELLANT, *v.* MARKS, APPELLEE.

(Decided April 23, 1937.)

*Mr. Paul Howland, Mr. H. J. Turney* and *Mr. W. B. Moore,* for appellant.

*Mr. W. O. Wallace,* for appellee.

NICHOLS, J. This cause comes into this court on an appeal on questions of law from the finding and judgment of the Probate Court of Columbiana county, wherein Idella A. Marks, guardian of John J. Marks, an insane person, filed a statement in lieu of her final account as such guardian, to which statement exceptions were filed by John J. Marks, upon the hearing of which the Probate Court made a finding and rendered judgment against the guardian and her bondsmen.

We are met at the outset of this proceeding with a motion to dismiss the appeal upon the ground that there is no right to appeal upon questions of law direct from the finding and decree of the Probate Court to the Court of Appeals. There has been no attempt to appeal this case as a chancery proceeding upon questions of law and fact. The motion to dis-

miss the appeal on questions of law is overruled upon authority of the case of *State, ex rel. The Medical Centre Co.*, v. *Wallace, Clerk of Court of Appeals*, 107 Ohio St., 557, 140 N. E., 305.

The record in this case discloses that about the 12th of March, 1910, Idella A. McKinney was married to John J. Marks, a widower, who was the father of three children by his first marriage, to. wit: Raymond, aged about seven years'; Dorothy, aged about six years; and Florence, aged about three years. At the time of the marriage Mr. and Mrs. Marks resided at North Lima, Mahoning county, Ohio, where Mr. Marks was engaged in the undertaking business. Subsequently the family moved to Columbiana, Ohio, where Mr. Marks continued in the undertaking business until December 19, 1919, when he was taken to a sanitarium at Cuyahoga Falls where he remained until about March 20, 1920, when he was adjudged insane by the Probate Court of Columbiana county, and committed to the Massillon State Hospital where he remained until June 1, 1935, when he was discharged as recovered. On December 6, 1920, Idella A. Marks was appointed guardian of the person and estate of her husband by the Probate Court of Columbiana county, Ohio. In the interim between the commitment of Mr. Marks to the state hospital and the date of the appointment of Mrs. Marks as his guardian, she, as his wife or agent, transacted his business affairs for him, and it was the conclusion of the Probate Court upon the hearing of this case that all transactions which took place prior to the appointment of Mrs. Marks as guardian were not the subject of inquiry in this proceeding, and with that conclusion of the Probate Court we are not inclined to disagree, and no appeal has been taken on behalf of Mr. Marks in connection therewith. Subsequent to her appointment as guardian, Idella A. Marks filed two accounts of her guardianship in the

Probate Court, the first account being filed December 2, 1922, and the second on March 30, 1925. No vouchers were filed with either of these accounts, but after published notice of the filing thereof and the time for hearing thereon each of these accounts was settled and approved by the Probate Court. Upon the settlement of the first account the court found in the hands of the guardian a balance of $992.81 "and investments"; and upon settlement of the second account the court found the sum of $816.50 due the guardian. Between the date of the filing of the first account and the date of the filing of the second account, Idella A. Marks removed with the children of her husband to Cleveland, where the children resided with her for a time, and some, perhaps all, of these children received support, at least in part, from the guardian. Subsequently, about January 7, 1928, by the consideration of the Common Pleas Court of Cuyahoga county, Idella A. Marks obtained a decree of divorce from John J. Marks for certain aggressions of his, alleged in her petition to have occurred prior to his insanity, and in the decree an award of alimony was made to Mrs. Marks in accordance with the prayer of her petition, to which we will hereinafter more fully refer.

After the appointment of Mrs. Marks as guardian of her husband's person and estate, she filed certain proceedings in the Probate Court of Columbiana county for authority to sell real estate owned by her ward, in which proceedings the ward, his children and Mrs. Marks were made parties defendant, and in which proceedings the guardian was authorized to and did sell certain real estate of her ward, a part of which was the former homestead of Mr. Marks and his family, situated in Columbiana, Ohio. At or about the time of the sale of the homestead property in Colum-

biana Mrs. Marks purchased real estate in Cleveland, taking the title thereto in her name as guardian.

While acting as guardian, Mrs. Marks, under authority granted by the Probate Court of Columbiana county, surrendered two insurance policies upon the life of Mr. Marks, and received the cash surrender value thereof. The guardian likewise obtained an order in the Probate Court to complete a certain contract which her husband had entered into prior to the time of his insanity for the sale of one parcel of his real estate.

After John J. Marks was released from Massillon State Hospital as recovered, he remarried and filed exceptions to the statement in lieu of final account filed by his former wife. Subsequent to the divorce proceedings above referred to, Mrs. Marks also remarried.

Upon the hearing in the Probate Court certain findings of fact and conclusions of law were made by that court, and judgment or decree entered thereon from which this appeal on questions of law is prosecuted. The following are the assignments of error filed by the appellant herein:

"1. That said Probate Court erred in sustaining the exceptions and refusing to accept the written and sworn statement of appellant in final settlement of her accounts as guardian of the estate of John J. Marks, insane.

"2. That said Probate Court erred in failing to overrule each and all of the exceptions of said appellee in the absence of any evidence of fraud or mistake.

"3. That said Probate Court erred, after sustaining said exceptions, in entering judgment immediately against this appellant when the prayer of the appellee was that in such an event the appellant be required to file an accounting in accordance with the laws of the state of Ohio.

"4. That said Probate Court erred in opening up said first and second partial accounts in the absence of any showing of fraud or mistake, after each of said accounts had been approved by the Probate Court of Columbiana county, the first account early in 1923 and the second account early in 1925.

"5. That said Probate Court erred in refusing to accept as binding the decree of the Common Pleas Court of Cuyahoga county in a certain divorce case No. 281632 therein, in which appellant was plaintiff and appellee was defendant, wherein said appellant was granted an absolute divorce from appellee for aggressions prior to his insanity and was awarded the real estate in Cuyahoga county, standing in appellant's name as guardian and purchased with the guardianship funds, to this appellant as her separate property and as and for her alimony.

"6. That said Probate Court erred in refusing to accept as binding the decree of the Court of Common Pleas of Cuyahoga county in said divorce case in which it awarded to appellant certain stocks in her possession as and for her alimony in said proceeding, among which was a certificate for five shares of the Home Savings & Loan Company of Columbiana.

"7. That said Probate Court had no jurisdiction to impeach said divorce decree or to modify its terms in this proceeding, which is collateral.

"8. That said Probate Court erred in refusing to hold that appellee was estopped from raising the question of the validity or sufficiency of the decree of the Common Pleas Court of Cuyahoga county by his conduct after he was restored to sanity, on or about June 1, 1935, by remarrying.

"9. That said Probate Court erred in refusing to hold that appellee ratified and approved the decree of the Common Pleas Court of Cuyahoga county by his

conduct in remarrying after being restored to sanity on or about June 1, 1935.

"10. That said Probate Court erred in refusing to hold that appellee having accepted the benefits of the decree of the Common Pleas Court of Cuyahoga county, must likewise be bound by and accept the burdens imposed thereby.

"11. That said Probate Court erred in refusing to accept the testimony of appellant and experts as to the reasonable cost of maintaining appellee's three minor children by a former marriage and the reasonable cost of maintaining appellant during the seven years prior to her divorce, i. e., January 7, 1928.

"12. That said Probate Court erred in refusing to allow appellant the value of her inchoate dower in $7,650, the proceeds of the sale of the homestead, sold pursuant to the order of the Probate Court of Columbiana county in a land sale proceeding in 1922.

"13. That said Probate Court erred in opening the first partial account and rendering a judgment for $93.08 against appellant in paragraph 3 of said journal entry, when the journal entry in the land sale proceeding in the Probate Court of Columbiana county shows that appellant reported $59.36 more than she was required to report by the court, on which sum she is entitled to interest amounting to $51.13, or in all $110.49.

"14. That said Probate Court erred in making a finding and rendering a judgment against appellant for the sum of $17,112.16, which is a much larger sum than the findings in fact justify, as will be explained in detail in our brief.

"15. The finding in the journal entry of said Probate Court in paragraphs 2, 3, 4, 5, 6, 7, 8 and 11 are manifestly against the weight of the evidence and that the finding in paragraph 9, allowing only $364 for the support of one of the children for only one year is

inadequate as to time and amount and against the weight of the evidence, and the elimination of any allowance for the support of the other children is erroneous and against the weight of the evidence.

"16. The finding of said Probate Court that appellant was only entitled to an allowance for her support and services from December 6, 1920, up to and including 1927, of only $600 a year, for three years, is erroneous, inadequate and against the weight of the evidence."

We have considered all of the errors assigned. We find no error wherein the Probate Court sustained certain exceptions and refused to accept the written and sworn statement of appellant in final settlement of her accounts as guardian. No vouchers are filed with this statement in lieu of account, but the same consists merely of a recital of the matters to which we have hereinbefore referred, together with the claim of the guardian that the proceeds of the sale of the homestead in Columbiana county were used by her in the purchase of the Cleveland property in her name as guardian pursuant to what she understood to be the authority of the Probate Court, and for the purpose of making a home for herself as wife of John J. Marks and a home for his children; and the further claim that all the property which came into her hands other than that which was allowed to her as alimony by the Common Pleas Court of Cuyahoga county had been properly expended by her for the support of herself and children previous to the divorce obtained by her from John J. Marks. The affidavit filed by Mrs. Marks in lieu of an account is not an itemized statement of receipts and expenditures such as is provided for in Section 10506-34, General Code, but is such a statement as authorized the Probate Court to hear proof of the matters herein set forth, to permit exceptions to be filed thereto and of which the

Probate Court had plenary power at law and in equity to fully dispose of the matter in accordance with the provisions of Section 10501-53, General Code, and as provided in Section 10506-39, General Code. It follows that exceptions numbered "1," "2," and "3," of the assignments of error filed herein are not well taken.

By the fourth assignment of error it is claimed that the court erred in opening up the first and second partial accounts filed by the guardian in 1922 and 1925, respectively. It is the contention of counsel for the appellant that the approval of these former accounts by the Probate Court is binding and conclusive between the guardian and her ward except for fraud, and it is claimed that there has been no sufficient showing of fraud to authorize the court in going back of these accounts.

Section 10506-40, General Code, provides in part as follows:

"The determination of the Probate Court on the settlement of an account shall have the same force and effect as a judgment at law or decree in equity, as the particular case may require, and shall be final as to all persons having notice of the hearing, except * * *

"(b) When an account is settled in the absence of a person adversely interested, and without actual notice to him, it may be opened on his filing exceptions to the account within eight months after such settlement; and

"(c) Upon any settlement of an account all former accounts may be so far opened as to correct a mistake or error therein, on condition, however, that a matter in dispute that has been previously determined by the court shall not be brought in question by either of the parties without leave of court upon good cause first shown; and

"(d) In case of fraud or collusion; and

"(e) As against rights which are saved by statute to persons under disability."

Under subdivision "b" of Section 10506-40, General Code, as above quoted, it appears, of course, that more than eight months have elapsed since the settlement of the first two accounts, but it is certain that the first two accounts were settled in the absence of the ward. And under subdivision "c" of Section 10506-40, General Code, it is provided that all former accounts may be so far opened as to correct a mistake or error therein, conditioned only that a matter in dispute that has been previously determined by the court shall not be brought in question by either of the parties without leave of court upon good cause shown. It seems apparent that nothing which was settled in the two previous accounts of the guardian was "a matter in dispute" at that time. We find that the Probate Court was authorized to open up these two former accounts in so far as the court found it necessary to correct any mistakes or errors therein, at least to the extent that the same were opened up and considered by the Probate Court. Indeed it may well be claimed that the failure of a guardian to account for moneys which are in his hands is a fraud upon the ward such as would bring this matter within the provisions of paragraph "d" of Section 10506-40, General Code. See *Lambright, Admr.,* v. *Lambright,* 74 Ohio St., 198, 78 N. E., 265. It is further noted that by the language of Section 10506-40, General Code, the settlement of an account is conclusive in any event only "as to all persons having notice of the hearing." And we do not find it claimed in this case that this insane ward, while an inmate of Massillon State Hospital, had any notice of the hearing upon the first two accounts except such constructive notice as an insane person may have from the fact that a notice of the filing and time set for the

hearing of each account was published in Columbiana county.

In connection with number four of the assignment of errors, it is shown by an examination of the finding of facts and conclusions of law made by the Probate Court, that these two previous accounts of the guardian were only opened up to the extent that the Probate Court found that at the time of the filing of the first account the guardian had omitted to charge herself with certain funds which were shown by her bank account to be in her hands at the time of accounting. We find no error in the finding by the Probate Court that the guardian omitted to charge herself in her first account with additional sums of money belonging to her ward in the total amount of $916.67, and that she was properly charged with interest on this sum from January 5, 1923, which, with interest to July 15, 1936, amounted to $1,660.70. It is, however, the decision of this court that the finding of the Probate Court wherein the guardian was charged with $50 with interest from March 6, 1922, on account of the sale of certain real estate made under the order of the court for $1,100, and of which the guardian charged herself in the account with but $1,050, is manifestly against the weight of the evidence, and therefore erroneous to the prejudice of the guardian for the following reasons, as shown by the record. At the time the tract of real estate was sold for $1,100 under order of the Probate Court, the court ordered the guardian to pay taxes in the amount of $8.88, out of the proceeds, and found that the guardian as wife of her ward was entitled to contingent dower in this tract of real estate, and found the value of her contingent dower interest to be $82.50. It does not appear that the guardian ever received credit for the amount found by the court as the value of her contingent dower in this real estate. It therefore appears from the record that instead of

charging the guardian with $50 and interest in connection with this sale of real estate, the court should have allowed the guardian credit for the additional sum of $32.50 with interest from March 6, 1922, and in this respect the judgment of the Probate Court was manifestly against the weight of the evidence and to the prejudice of the appellant, and the judgment of the trial court is modified in this respect, so as to allow her credit for $32.50 with interest from March 6, 1922.

As shown by the proceedings of the Probate Court, the guardian sold the residence property of the ward located on Vine street, Columbiana, Ohio, to Lloyd R. Wilson for $7,650, and in accordance with the order of the court the guardian paid out of the proceeds of this sale taxes in the amount of $82.12, leaving a balance of $7,567.88. This item is the principal one in dispute under the exceptions filed to the statement in lieu of account; and the Probate Court held that the guardian had never accounted for the net proceeds of this real estate in the sum of $7,567.88, and made a finding against her in that amount with interest from January 7, 1928, the date of the divorce, the Probate Court reasoning that she should have the interest on this sum from the date of the sale to the date of divorce in lieu of an allowance for rent of a home for herself and the ward's children. We have carefully examined the record of the proceedings in the Probate Court in the matter of the sale of this real estate as well as the evidence touching upon the action of the guardian in acquiring a new home in Cleveland. It was the opinion of the Probate Court that the guardian was not justified in removing from Columbiana county to Ceveland; but we know of no law which requires a guardian to live in any particular place in the state, although the statute provides that her removal from the state will automatically work a removal of the guardian. It is true that the Probate

Court would have been authorized to remove the guardian because of her removal from the county if it had appeared upon proper motion that such removal was not for the best interests of the ward and those for whose support he was legally liable. We think that the evidence clearly discloses that at the time the guardian removed from Columbiana county notice thereof was had by the Probate Court, and no action was taken toward the removal of the guardian because of her removal from the county. An examination of the account of the guardian filed after the sale of the residence property in Columbiana discloses that she did not charge herself with the proceeds of the sale of this Columbiana residence in cash, but she did report to the court that $7,000 was invested in a homestead. The Probate Court at that time had judicial notice of all the files and records of its court with reference to this guardianship, and knew that the homestead in Columbiana county had been sold. An examination of the second account discloses that the guardian was allowed credit for taxes and repairs made upon the real estate in Cleveland. In the second account credit was taken for taxes upon this real estate, and it must be assumed that the Probate Court at that time, in the absence of vouchers filed with the account, was furnished with proof of the various expenditures for which credit was taken in the account. The statute did not require the guardian to furnish vouchers, but only required her to show by vouchers ''or proof'' that the amounts for which she took credit were proper expenditures on behalf of her ward. A further examination of the proceeding wherein the court ordered the residence property in Columbiana sold, discloses that the guardian in her petition to sell this real estate represented ''that the sale of said real estate is necessary for the maintenance and support of her ward's wife, and minor children, and for the edu-

cation of his children; that the petitioner believes it will be for the best interests of said ward to sell said real estate for said purposes; and if it should be thought advisable so to do, to reinvest the funds which are not necessary for said support in interest bearing securities *or real estate more suitable for the maintenance and support of the ward's wife and children."*

In the petition of the guardian for the sale of the residence property in Columbiana no mention is made of the fact that Idella A. Marks has a contingent dower interest in the premises sought to be sold, and although Idella A. Marks was made a defendant to this petition, she filed no answer making claim to her contingent dower but did file her waiver of summons and entry of appearance and consent to the sale of the real estate as prayed for. The Probate Court at that time knew that Idella A. Marks was the wife of the ward, undoubtedly knew that she had a contingent dower interest in his real estate; at least it must be taken for granted that the court had judicial notice of these matters, and yet the court ordered this property sold free and clear of her dower without making any provision for her contingent dower interest. The entry of the court authorizing the sale of this residence property in Columbiana county contains the finding of the court as to the necessity for the sale, in the following language as shown by the journal entry:

"The court find that as set out in said petition the real estate therein described ought to be sold for the maintenance and support of the ward's wife and minor children and for the education of the ward's children, and if it should become advisable so to do then to reinvest the funds which are not necessary for said support in interest bearing securities or real estate more suitable for the maintenance and support of the ward's wife and children."

As hereinbefore stated, in her second account the

guardian set forth therein that the assets of the estate consisted in part of a homestead of the value of $7,000. This account was settled and approved by the Probate Court. It is the opinion of this court that the evidence warrants the finding that of the monies received by the ward as the proceeds of the sale of the residence property in Columbiana, the guardian had expended $7,000 thereof in the purchase of a homestead at Cleveland, and that by the approval of the second account the Probate Court gave its approval to this investment of the ward's funds. Furthermore, we think the evidence warrants the finding that the guardian acted in good faith in the purchase of this real estate and for the best interests of her ward's children. The real estate purchased at Cleveland not only provided a home for the wife and the ward's children up to the time of the divorce and alimony decree, but likewise was of the character of an income-producing property in that it consisted of a double house, one-half thereof being rented for about fifty dollars a month and thereby providing a fund which contributed in some degree to the support of those persons for whose support the ward was liable. In the second account filed by the guardian she charges herself with these rents which were in excess of the amounts expended by her for repairs and taxes. It is true that the real estate purchased in Cleveland was encumbered, and that the title was not taken in the name of the ward as provided by law. But these matters were both matters of which the Probate Court at the time had judicial notice from the files of the court, and it is clear from the evidence that the guardian did not take the title to this real estate in her name as guardian for any ulterior purpose, or with any design to cheat or defraud the ward out of the property, for the reason that she reported it in her account and at the time she filed her petition for divorce and alimony

in the Common Pleas Court of Cuyahoga county she represented that this real estate was the property of her husband and ward.

It is the finding of this court, after a careful consideration of the record, that the finding of the Probate Court wherein the guardian was charged with $7,567.88 with interest from January 7, 1928, is manifestly against the weight of the evidence, except as to the sum of $567.88, being the difference between the net proceeds of the sale of the Columbiana residence and the amount shown on her second account as being invested in real estate, to wit, $7,000. And the judgment of the trial court is therefore modified so as to charge the guardian with the sum of $567.88 with interest from January 7, 1928, instead of $7,567.88 with interest from that date.

From an examination of all the evidence before us in this case we think there could have been no reason for the failure of the wife to claim the value of her contingent dower in the Columbiana residence, and the failure of the court to award her the value of her contingent dower therein except upon the theory that the guardian and the court both well understood that the proceeds of the sale of the Columbiana residence were to be reinvested in the home in Cleveland, whereby the wife's contingent dower interest would be transferred from the Columbiana property to the Cleveland property. In making our finding that the court manifestly erred in failing to sanction the action of the guardian in thus exchanging a homestead in Columbiana for a homestead in Cleveland, in accordance with the apparent approval thereof made by the court at the time, we have further considered and found that the Probate Court in the finding and decree under consideration here, was unauthorized to review the judgment of the Common Pleas Court of Cuyahoga county in the divorce and alimony proceeding to which we

have hereinbefore referred. In that proceeding the Common Pleas Court awarded the Cleveland real estate to Mrs. Marks as and for her alimony, and further awarded to her certain stocks which were, as found by that court, of little or no value. At the time of this decree in the Cuyahoga county Common Pleas Court there were no stocks in the hands of the guardian except five shares of the capital stock of the Home Savings & Loan Company of Columbiana, Ohio. We do not have before us the evidence taken in the Common Pleas Court in the divorce and alimony proceeding, but we fail to see how there could be any doubt as to what stocks were referred to in that decree, since the ward owned no other. The stock in the Home Savings & Loan Company of Columbiana having been awarded to the wife, as and for her alimony, or a part of such alimony, and the Probate Court having no power to modify, reverse or review the action of the Common Pleas Court of Cuyahoga county in that respect, it follows that the Probate Court erred in directing the guardian to deliver these five shares of stock to the ward, and that such finding and order of the Probate Court is contrary to law, and the judgment of the Probate Court in that respect is for that reason reversed.

In this connection we refer to the fact that John J. Marks, after being restored to reason and discharged from the Massillon State Hospital, accepted the benefits of the divorce proceeding in Cuyahoga county in that he thereafter remarried, thus recognizing the validity of that proceeding and waiving any right to object to that part of the decree of the Common Pleas Court of Cuyahoga county which he might thereafter deem to be against his interest. In accepting the benefits thereof, he likewise accepted the whole decree, but it is not necessary for us here to decide whether the decree of the Common Pleas Court of

Cuyahoga county might be opened up for alleged fraud on the part of Mrs. Marks; nor was it the province of the Probate Court to determine whether that decree was obtained by fraud. Any relief to which Mr. Marks may be entitled may still be had by him in a proper action in the court wherein his property was decreed to his wife for her alimony.

The Probate Court found that the guardian under authority of that court had received as assets of her ward the sum of $1,684, being the cash surrender value of two certain policies of insurance upon the life of John J. Marks, and charged the guardian with this sum with interest from July 3, 1927. We find no error in the judgment of the trial court in this respect. The fact, as shown by the record, that the guardian paid $1,500 of this insurance money to the three children of her ward, does not in any way relieve her from liability to her ward on account of these funds. She was not authorized to make a distribution of his estate to his heirs during his lifetime.

We find no error in the finding and decree of the Probate Court charging the guardian with $550 with interest from October 1, 1926, being the proceeds received upon surrender of five shares of the stock of the Central Steel Company on that date. The guardian had not accounted for the proceeds of these shares.

The allowances to the guardian for her support as wife of her ward and as support for the children of her ward are not found to be manifestly against the weight of the evidence, and we find no error wherein the court allowed her credit for the sum of $364 for the support of Florence Marks and allowed the guardian credit for the sum of $1,800 for the support of herself as wife of John J. Marks, for the three years next preceding the divorce. However, allowances of this nature are in the sound discretion of the Probate Court and are made only when the guardian asks for such

allowances upon the filing of her accounts. For this reason no interest was properly allowable to the guardian upon the sums awarded her for support of herself and the child of her ward.

In our finding that the court erred in refusing to find that the guardian had received approval of the Probate Court in the matter of the investment of $7,000 of the funds of the ward in the Cleveland property, whereby the homestead in Columbiana was exchanged for a homestead in Cleveland, we have not been unmindful of the decision of the Court of Appeals in the case of *Soliday* v. *Ash*, 40 Ohio App., 498, 179 N. E., 150. We distinguish the case of *Soliday* v. *Ash* by our holding that the finding and decree of the Probate Court was manifestly against the weight of the evidence in the case at bar upon the subject of the authorization of the investment in the Cleveland real estate. No one questions but that the court could approve of an investment of the ward's funds in real estate, and it is our conclusion that the evidence in this case was such as to establish the approval of the questioned investment. Our finding upon this subject is not based alone upon the fact that the guardian listed the investment as a part of her ward's estate in the second account, which was filed by her and approved by the court, but the same was approved by reason of the many other facts and circumstances shown in the record and some of which we have hereinbefore referred to.

In this connection we have examined and cite the case of *American Bonding Co. of Baltimore* v. *Second National Bank of Cincinnati and Healy, Trustee*, 22 C. C. (N. S.), 177, 33 C. D., 502, from which we quote proposition two of the syllabus:

"2. Where a trustee purchases with funds in his hands bonds constituting the highest form of investment known to the law, and the investment is reported

to the court in his account which is confirmed in due course, such confirmation operates as an approval of the investment as fully as though a prior formal order had been made."

In the case of *Warner* v. *Hoffman*, 21 Ohio Law Abs., 678, the Court of Appeals of Montgomery county analyzes the case of *Soliday* v. *Ash, supra,* and states that the case contended for by the guardian in the *Soliday case* had not been made on the factual proof.

We are of the opinion that no settled rule on this subject can be laid down and that each case is to be determined by its own facts as to whether the record discloses an approval of the action of the guardian in making an investment of her ward's funds under the particular circumstances. We do not doubt the proposition that the *pro forma* approval by the Probate Court of a partial account of the guardian of an incompetent, to which no exceptions have been filed, may be inquired into on exceptions filed to a later account.

We further cite the case of *In re Trusteeship of Tischer*, 46 Ohio App., 405, 188 N. E., 876.

We find no error in the finding and decree of the Probate Court wherein he charged the guardian with the sum of $317.27 with interest from July 10, 1929, being the proceeds of the sale of certain real estate in Youngstown not theretofore accounted for by the guardian.

Having considered all of the errors assigned, and finding that in the respects hereinbefore set forth the judgment of the Probate Court was contrary to law and manifestly against the weight of the evidence, such judgment is modified as follows:

The guardian is charged with:

$916.67 with interest from January 5, 1923, being the amount of funds found by the Probate Court to have been in the hands of the guardian at the time of her first account and for which she failed to charge

herself in that account, amounting with interest to July 15, 1936, to $1,660.70.

$567.88 with interest from May 1, 1923, being the balance of the proceeds of the sale of the residence property in Columbiana after deducting therefrom the amount expended for the homestead in Cleveland, amounting with interest to July 15, 1936, to the sum of $1,015.13.

$550.00 with interest from October 1, 1926, being the proceeds received upon surrender of five shares of the Central Steel Company which, with interest from July 15, 1936, amounts to $873.03.

$1,684.00 with interest from July 3, 1927, being the cash surrender value of two life insurance policies, amounting with interest to July 15, 1936, to the sum of $2,597.24.

$317.27 with interest from July 10, 1929, being the proceeds of the sale of Youngstown lot amounting with interest to July 15, 1936, to the sum of $450.78.

Total charges $6,596.88.

The guardian is entitled to credit as follows:

$32.50 with interest from March 6, 1922, being the value of her contingent dower interest in the real estate sold for $1,100.00, as found by the Probate Court after deducting therefrom $50 with which she failed to charge herself in her former account, and amounting, with interest to July 15, 1936, to the sum of $60.50.

$364.00, being the amount allowed by the Probate Court for the support of Florence, minor child of the ward, $364.00.

$1,800.00, being the amount allowed by the Probate Court for the support of the wife of the ward, $1,800.00.

Total credits $2,224.50.

Leaving a balance due from the guardian to her ward of $4,372.38, with interest from July 15, 1936.

As so modified the judgment of the Probate Court is affirmed.

*Judgment modified and affirmed.*

ROBERTS and CARTER, JJ., concur.