## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 18 2015, 8:30 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

Daniel L. Askren
O'Connor and Askren Law Office
Attica, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of M.C. (Minor Child),

and

K.P. (Mother) and C.C. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

September 18, 2015

Court of Appeals Case No.
23A04-1503-JT-114

Appeal from the Fountain Circuit Court

The Honorable Susan Orr Henderson, Judge

Trial Court Cause No.
23C01-1411-JT-170

**Crone, Judge.**

# Case Summary

K.P. ("Mother") and C.C. ("Father") (collectively "Parents") appeal the trial court's termination of their parental relationship with their daughter M.C. They challenge the trial court's denial of their oral motion for continuance on the day of the final hearing. They also submit that the trial court erred in determining that there is a reasonable probability that the conditions that led to M.C.'s removal will not be remedied. Finding that the trial court acted within its discretion in denying Parents' last-minute motion for continuance and that the trial court did not clearly err in determining that there is a reasonable probability that conditions would not be remedied, we affirm.

# Facts and Procedural History

M.C. was born to Parents out of wedlock on February 27, 2013, and Father's paternity was legally established. In August 2013, she was admitted to Riley Hospital due to medical neglect and failure to thrive. Photographic exhibits and hospital records indicate that she was emaciated, malnourished, and lethargic, had insect bites all over her face, had a foul odor, and could not move or lift her head. Medical records indicate that she lost two pounds from June to August 2013. The Department of Child Services ("DCS") removed her from Parents' care and placed her with her maternal grandfather ("Grandfather") and step-grandmother (collectively "Grandparents") upon her release from the hospital.

[3]     On August 26, 2013, DCS filed a petition seeking to have M.C. designated a child in need of services ("CHINS"), and Parents denied the CHINS allegations at a detention hearing held the same day. Factfinding and dispositional hearings followed, and the trial court designated M.C. a CHINS. Parents failed to appear at the November 2013 dispositional hearing, and joint counsel appeared on their behalf. The trial court subsequently issued a permanency order with concurrent plans of reunification with Parents and guardianship for Grandparents. The court ordered Father to participate in couples counseling, individual counseling, and supervised visitation. The court ordered Mother to participate in mental health and parenting assessments, case management, visitation, and couples counseling. Mother was arrested and incarcerated twice during the pendency of the CHINS case.

[4]     In November 2014, DCS filed a petition to terminate Parents' relationship with M.C. The trial court held a periodic review hearing in early December. Parents were present when the trial court set the final hearing date of February 5, 2015. The trial court found that Parents had not fully complied with the case plan, had not cooperated with DCS, and had not alleviated the cause of M.C.'s removal or supervision. DCS ordered additional services for Father, including a parenting assessment followed by referrals for home-based case management and individual counseling to address his substance abuse and stress issues. DCS also referred Mother for individual therapy to address issues such as her substance abuse, conflict resolution, and stress management.

[5] Parents did not attend the February 5, 2015 termination hearing but were represented by counsel. At the outset of the 9:00 a.m. hearing, counsel requested a continuance based on Parents' absence. Court personnel notified the trial court that Mother had called the court at 8:00 a.m. and indicated that she and Father were running late due to road conditions. At 9:15 a.m., the trial court acknowledged the road conditions, denied the request for continuance, and proceeded with the witnesses who were present. Parents never appeared. Counsel renewed Parents' continuance motion at the close of the hearing, and the trial court denied it.

[6] Based on the evidence, the trial court concluded that it is in M.C.'s best interests that Parents' rights be terminated and that she be adopted by Grandfather. The trial court issued an order containing findings of fact and conclusions thereon terminating the parent-child relationship. Parents now appeal. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – The trial court acted within its discretion in denying Parents' last-minute oral motion for continuance.

[7] Parents challenge the trial court's denial of their oral motion for continuance made by counsel at the February 2015 termination hearing when they failed to appear. The decision to grant or deny a motion for continuance is within the sound discretion of the trial court. *J.P. v. G.M.*, 14 N.E.3d 786, 789 (Ind. Ct.

App. 2014). We will reverse only for an abuse of that discretion. *Rowlett v. Vanderburgh Cnty. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2005), *trans. denied* (2006). An abuse of discretion occurs where the trial court reaches a conclusion that is clearly against the logic and effect of the facts or the reasonable and probable deductions that may be drawn therefrom. *J.P.*, 14 N.E.3d at 790. Where the trial court denies a motion for continuance, an abuse of discretion will be found if the moving party has demonstrated good cause for granting the motion. *Rowlett*, 841 N.E.2d at 619; *see also* Ind. Trial Rule 53.5 (stating that trial court has discretion to grant continuance on motion and continuance "shall be allowed upon a showing of good cause established by affidavit or other evidence."). No abuse of discretion will be found where the moving party has not shown that he was prejudiced by the denial of his continuance motion. *J.P.*, 14 N.E.3d at 790.

[8] Parents characterize the denial of their motion for continuance as a denial of their due process rights. When the State seeks to terminate parental rights, it must do so in a fundamentally fair manner that meets due process requirements. *In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011). Due process affords parents the opportunity to be heard at a meaningful time and in a meaningful manner. *Id*. The United States Supreme Court addressed the due process requirement in connection with requests for continuance in *Ungar v. Sarafite*, 376 U.S. 575, 589-90 (1964), reasoning,

> The matter of continuance is traditionally within the discretion of
> the trial judge, and it is not every denial of a request for more

time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrawise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request was denied.

[9]     *Ungar* specifically addressed a request for continuance to engage counsel. *Id.* Here, counsel attended the hearing but Parents did not. The transcript indicates that Mother contacted the court one hour before the scheduled start time and indicated that she and Father would be late due to weather conditions. The trial court acknowledged the road conditions but allowed counsel to proceed in questioning witnesses and presenting evidence on behalf of Parents, who failed to appear at all. Grandfather, who testified that he lived in the same community as Parents,[1] told the court that the roads were in drivable condition and that he had no problem getting to the hearing. Tr. at 115. This sentiment was echoed by others present in the courtroom. In denying Parents' motion for continuance, the trial court found as follows:

> Parents were in court on Dec. 2, 2014 when said hearing date was set. Parents have not maintained contact with their counsel. Counsel, on behalf of their client, each move the court for a

---

[1] The record indicates that Mother and Father both changed housing arrangements several time during the pendency of the proceedings. Grandparents lived in Newport. Mother lived in Newport at one point in January 2015. Of the surrounding towns in which Mother and Father had lived, none was more than 22 miles from the court, and each was adjacent to a U.S. highway.

> continuance of the hearing. No cause was shown to the court why the parents failed to appear and motion for continuance is denied.

Appellants' App. at 12.

[10]     We agree that Parents failed to demonstrate good cause for missing the hearing. We note that Father has a history of failing to appear, having been arrested on a failure to appear warrant in connection with his 2014 domestic battery charge, and that Parents previously failed to appear for a 2013 CHINS hearing and were represented by counsel. As for the termination hearing, the only message that the trial court received was Mother's 8:00 a.m. phone message stating that she and Father were running late due to bad weather. However, the weather did not prevent counsel, other witnesses, the trial court, or court personnel from attending, and Mother's phone message to court personnel indicated that they would merely be late and presumably were on their way. The hearing actually started at 9:15 a.m. The 122-page transcript indicates that there was at least one recess and that the hearing was long enough to have afforded Parents the time to travel the approximately twenty miles on roads that witnesses and counsel had described as drivable. As such, the record was not closed before Parents had an opportunity to arrive and be heard. Moreover, Parents' failure to maintain contact with counsel for the weeks preceding the hearing shows that they had little interest in assisting in the preparation and presentation of their case. Nevertheless, counsel attended the hearing and questioned witnesses on their behalf. In short, Parents were not deprived of fundamental fairness in the

presentation of their case. Based on the foregoing, we find no abuse of discretion in the trial court's denial of counsel's last-minute request for continuance.

## Section 2 – The trial court did not clearly err in determining that there is a reasonable probability that the conditions leading to M.C.'s removal will not be remedied.

[11] Parents challenge the sufficiency of evidence supporting the trial court's judgment terminating their parental relationship with M.C. When reviewing a trial court's findings of fact and conclusions thereon in a case involving the termination of parental rights, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). We will set aside the trial court's judgment only if it is clearly erroneous. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We neither reweigh evidence nor judge witness credibility. *In re A.I.*, 825 N.E.2d 798, 805 (Ind. Ct. App. 2005), *trans. denied*. Rather, we consider only the evidence and inferences most favorable to the judgment. *Id*.

[12] In *Bester*, our supreme court stated,

> The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests. Indeed the parent-child

relationship is one of the most valued relationships in our culture. We recognize of course that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

839 N.E.2d at 147 (citations, quotation marks, and alteration omitted).

[13] To obtain a termination of the parent-child relationship between Parents and M.C., DCS was required to establish in pertinent part:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

….

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[14] In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard. Ind. Code § 31-37-14-2; *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied.* "Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's very survival. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citation omitted).

[15] Here, Parents challenge only the trial court's determination that there is a reasonable probability that the conditions that led to M.C.'s removal will not be remedied. As such, we need not address the other statutory elements. When assessing whether there is a reasonable probability that conditions that led to a child's removal will not be remedied, we must consider not only the initial basis for the child's removal but also the bases for continued placement outside the home. *A.I.*, 825 N.E.2d at 806. Moreover, "the trial court should judge a parent's fitness to care for [her] children at the time of the termination hearing, taking into consideration evidence of changed conditions." *In re J.T.*, 742

N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*.  "Due to the permanent effect of termination, the trial court also must evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child."  *Id*.  For example, the court may properly consider evidence of a parent's substance abuse, criminal history, lack of employment or adequate housing, history of neglect, and failure to provide support.  *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).  In making its case, "DCS need not rule out all possibilities of change; rather, [it] need establish only that there is a reasonable probability that the parent's behavior will not change."  *In re Kay.L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[16]  Here, the trial court issued extensive findings of fact, and Parents have not specifically challenged any of those findings.  Instead, they make general assertions referencing their early participation in services aimed toward reunification.  As such, we are left to determine whether the unchallenged findings support the judgment.  As they concern the reasonable probability of remedied conditions, the unchallenged findings include the following:[2]

> 3.  There is clear and convincing evidence that a reasonable probability that the conditions that resulted in the removal of the

---

[2]  To the extent that the trial court's findings refer to Parents and M.C. by name, we have altered those references accordingly.

child[] from the home will not be remedied. The court bases its findings on the following factors:

a. The family became involved with Fountain County [DCS] as a result of an allegation of abuse and neglect of the child after her admission to Riley Hospital in August of 2013. The child was born on Feb. 27, 2013 and was admitted to Riley Hospital at 6 months of age to determine why she was losing weight. The assessment officer, Sonja Janssen Luper, testified that her observations of the child showed an infant with no body fat and emaciated; she was lethargic and unable to raise her head. She had a foul smell and her clothing was dirty. Photographs admitted as DCS Ex. 2-5 accurately confirm those observations. The child was clearly failing to thrive under her Parents['] care and was in serious medical condition. She appeared covered in insect bites on her head and face.

b. The child was adjudicated a CHINS on Oct. 10, 2013. Parents were not married but DNA testing conducted while case was pending established Father as M.C.'s father and legal paternity was established. The dispositional decree entered on Nov. 13, 2013 ordered the Parents to participate in services. Mother was ordered to participate in a mental health assessment and parenting assessment and comply with recommendations thereof; case management; supervised visits and couple's counseling. Father was ordered to participate in individual and couples counseling as well as supervised visits.

c. After child was adjudicated a CHINS and before services could be put in place, parents relocated from Fountain County to northern Indiana. Mother was arrested and prosecuted in Vermillion County Indiana for check deception. Father returned to his [m]other's home in Kingman, Indiana. Mother remained jailed from

immediately after disposition until Feb. 27, 2014. Upon her release from incarceration, Mother engaged in services and completed the mental health and parenting assessments; participated in supervised visits and commenced couples counseling. Father participated in the Fatherhood Engagement, substance abuse treatment and supervised visits. Generally from Feb. 2014 to the review hearing on May 15, 2014 parents were compliant with services and working toward the goal of reunification. Child was thriving in relative care, gaining weight and starting to reach appropriate development goals.

d. Parents were unable to sustain their relationship and both were arrested for Battery/Domestic Battery in July of 2014. Mother was arrested for probation violation for the check deception charges and remained in jail on both the probation violation and the battery charges until sometime in Nov. 2014. Parents continued to struggle with substance abuse issues, but for the vast majority of screens obtained, Mother remained clean. Father had more failed screens and was not compliant with the court's order to participate in random screens. Parents generally participated in supervised visits and had moved to semi-supervised during the Spring/Summer of 2014. Parents were no longer living with one another and it was anticipated that the child would be going to Mother's for a trial home visit. This goal was not reached after Mother was re-arrested.

e. Father also was charged as a result of the July incident and failed to appear in court when ordered to do so. He was arrested on a failure to appear warrant and the court is uncertain when he was released from jail. During mother's period of incarceration, Father lived with his mother, moved into a trailer, moved back to his mother's and did not maintain stable housing. Father participated

in services with the Fatherhood Engagement, but was not invested in the benefits of individual therapy and that service[] was discontinued. From the Fall into winter of 2014 Father missed 3 visits with the child and since Dec. 2014 has not seen the child at all. Father was ordered to provide proof of employment and submit a budget to DCS. He has failed to do so. Father's ability to maintain a job is uncertain as he has fail[ed] to provide DCS with his employment information;

f. Upon Mother's release from jail, she live[d] with her grandmother until a few weeks of this hearing. Mother was hospitalized on what was reported to be an overdose of some drug and was not allowed to return to grandmother's home upon her release from the hospital. Mother's whereabouts are currently unknown. Although Mother was incarcerated during a large period of time while this case was pending, her initial compliance with services were indicative of her level of commitment for reunification. However, following her release from incarceration in Nov. 2014 she has not demonstrated any interest or willingness to re-engage in services or participate in visits with the child;

g. Despite initial compliance and efforts to cooperate and participate in services, the parents have been unable to sustain progress to effectuate a reunification. Based on parents' lack of cooperation, their failure to maintain contact with service providers and demonstrated lack of involvement in this case since Nov. 2014 indicates to the court continuing to offer services would be ineffectual[];

h. …. Parents have been unable to sustain employment, suitable housing, or a drug free lifestyle. These are ongoing problems and do not appear that any improvement in their circumstances will be happening in

the near future. The child has been in [and] out of home placement for seventeen months and needs a permanent and stable home[.]

Appellants' App. at 13-15.

[17] The initial basis for removal, medical neglect, is depicted in startling photographic exhibits showing M.C.'s emaciated, bony frame, hanging skin on her legs, and numerous insect bites on her face and head. Petitioner's Exs. 2-5. The listless six-month-old baby had lost two pounds from her already tiny frame and could not lift her head. She eventually needed leg braces and began to show progress after she was placed with Grandparents. The trial court's unchallenged findings emphasize Mother's and Father's individual inability to sustain progress due to their own instability in housing and employment as well as their failure to avoid drug use and other criminal conduct. We are sensitive to situations in which a parent's incarceration hinders participation in services but note that when Mother was released after her second stint of incarceration, she did not resume services. She briefly resumed visits with M.C. after her release but did not visit her at all for several weeks leading up to the final hearing. Sadly, Mother instead resumed her drug use and was briefly hospitalized due to an overdose. Likewise, Father did not avail himself of visitation in the weeks preceding the termination hearing. As with services, Parents failed to earnestly commit to consistent visitation with M.C. *See Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007) (failure to exercise right to visit one's children demonstrates lack of

commitment to complete actions necessary to preserve parent-child relationship), *trans. denied.*

[18] In sum, M.C. was in serious physical jeopardy when she arrived at Riley Hospital and was removed from Parents' care. Although Parents initially took steps toward reunification with her, they could not sustain their progress due to their own instabilities and patterns of destructive conduct. In other words, they could not maintain a consistent positive relationship with M.C. because they could not maintain consistent positive patterns in their own lives. "[A] trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship." *Castro*, 842 N.E.2d at 372. The trial court did not clearly err in determining that there is a reasonable probability that the conditions that led to M.C.'s removal will not be remedied. Accordingly, we affirm its termination order.

[19] Affirmed.

May, J., and Bradford, J., concur.