OPINION
By BARNES, J.
The above entitled cause is now being determined as an error proceeding by reason of plaintiffs’ appeal on questions of law from the judgment of the Court of Common Pleas of Clark County, Ohio.
The case was tried originally in the Probate Court of Clark County, Ohio, upon exceptions and supplemental exceptions to the fifth and final account of The First National Bank and Trust Company, of Springfield, Ohio, as trustee for Harriet B. Dimond and others, under the will of Ellen L. Bushnell, deceased.
The exceptions were filed by Harriet B. Dimond, cestui qui trust, Douglas Dimond, Asa B. Dimond and Henrietta D. Quinn, remainder men under the will of Ellen L. Bushnell, deceased, and sole children of Harriet B. Dimond, and S. A. Bowman, successor trustee.
These exceptions are as follows:
“1. That said Trustee was grossly negligent in the performance of its duties in that it failed and neglected to comply with the provisions of the will creating said Trust wherein said provisions prescribe the character of investments to be made by the Trustee thereof, in that said Trustee expended the sum of $5,000.00 belonging to said trust estate for the purchase of a 5/1000 interest in the City National Bank Building, Omaha, Nebraska, which interest is represented by a paper designated as “Land Trust Certificate, No. 973,” to the detriment of said trust estate to an extent to be determined by ascertaining the difference between said sum of $5,000.00 and the present value of said Land Trust Certificate.
2. That said Trustee was grossly negligent in the performance of its duties in that it failed and neglected to comply with the provisions of the will creating said trust wherein said provisions prescribe the character of investments to be made by the Trustee thereof, in that said Trustee by the sale and exchange of 366 shares of the capital stock of the First National Bank & Trust Co. purchased and received 2196 shares of the common stock of the BancOhio Corporation, to the detriment of said trust, estate to an extent to be determined by ascertaining the difference between the value of said 366 shares of said First National Bank & Trust Co. stock at the date of said sale and the present market value of said 2196 shares of BancOhio stock; that by reason of the failure *250 of said Trustee to comply with the provisions of said will, said estate was further damaged by the difference between the dividends or interest which the proceeds of said 366 shares of First National Bank & Trust Co. stock would have earned if same had been invested according to the terms of said will, and the amount of dividends which said trust estate has received from said 2196 shares of the BancOhio Corporation stock.
3. That said Trustee was grossly negligent in the performance of its duties in that as Trustee of the estate of Ellen L. Bushnell it purchased from itself on or about the 6th. day of June, 1930, a certain mortgage executed by John G. Cashman, et al., mortgagors, to the American Trust & Savings Bank, mortgagee; that said Trustee was further grossly negligent in the performance of its duties in that it it has permitted the interest due upon said mortgage to become delinquent, and in that it has permitted the taxes to become and remain unpaid so that same were certified delinquent on or about September 2, 1932, and that since said date no taxes have been paid upon the premises covered by said mortgage; so that there is now a large amount of unpaid taxes a lien upon said property.
4. That there are items of accounting contained in the former reports of said Trustee and its predecessor, The American Trust & Savings Bank, which should be investigated by the Court and which will require the opening up of said accounts for investigation and proof.”
Prior to the hearing in the Probate Court, on June 8, 1936, supplemental exceptions were read into the record, and the case was tried on the original and supplemental exceptions. The supplemental exceptions are as follows:
“1. That said Trustee was grossly negligent in the performance of its duty in that said Trustee failed and neglected to comply with the provisions of the will creating said trust wherein said provisions prescribed the character of the investments to be made by the Trustee thereof in that said Trustee by an exchange of 366 shares of the stock of the First National Bank & Trust Company purchased, received and obtained therefor 2196 shares of the BancOhio Corporation to the detriment of said estate and dimunition of the corpus thereof to the amount of $93,428.00, the same being the cash market value of said stock in the First National Bank & Trust Company; that said trustee was further guilty of bad faith in making said investment in that the BancOhio Corporation at that time controlled and directed the affairs of the First National Bank & Trust Company by ownership and/or control of more than 51% of its corporate stock and that, therefore, said transaction amounted, for all practical purposes, to said trustee dealing with itself. That, in addition to the improper and unwarranted investment of said $93,428.00 as hereinbefore set forth, said trustee, after having invested said sum, as aforesaid, was grossly negligent in failing to protect said sum of $93,428.00 in that it failed to exercise the diligence required by law of a trustee in protecting the assets of a trust, estate; that at the time said First National Bank & Trust Company, trustee, purchased, received and obtained said 2196 shares of the stock, the BancOhio Corporation, by stock ownership, controlled and *251 directed the affairs of the First National Bank & Trust Company, said BancOhio Corporation at that time owning over 51% of the stock of said First National Bank & Trust Company, and that ever since said wrongful and illegal investment the BancOhio Corporation, through stock ownership, has controlled the First National Bank & Trust Company and has always owned over 51% of the stock of said First National Bank & Trust Company. Wherefore, said trustee was negligent in retaining said BancOhio Corporation stock in the corpus of said trust, regardless of the propriety of the original investment therein, due to the fact that it is chargeable with actual and peculiar knowledge of the affairs of the BancOhio Corporation, and knew, or in the exercise of reasonable caution, should have known, that the earnings of the BancOhio Corporation were steadily declining and that the stock of the BancOhio Corporation was .steadily and surely decreasing in value; that for this reason the said •trustee was negligent and careless in permitting said BancOhio Corporation stock to remain the corpus of said estate.
.2. That said trustee was further guilty of gross negligence and bad faith in the performance of its duties in that on January 6, 1931, said First National Bank & Trust Company sold to itself, as trustee of this estate, a certain note and mortgage executed May 13, 1925, by Walter K. Marshner to the American Trust & Savings Bank in the sum of $5000.00, which mortgage covered Lot No. 10736 Ridgewood Addition; that at the time of said illegal and wrongful sale the real estate covered by said mortgage was not double the value of the note which it secured, and, in fact, was not even valued at the sum of $5000.00; that on or about June 6, 1930, said First National Bank & Trust Company sold to itself, as trustee of this estate, a note and mortgage executed April 28, 1923, by John G. Wickham to the American Trust & Savings Bank; that upon the date of said sale the property covered by said mortgage, as security for said note, was not double in value the amount then unpaid on said note and, in fact, was not valued at the then unpaid balance due on said note; that on or about the —■ day of --■, 19 — , said First National Bank & Trust Company sold to itself, as trustee of this estate, a note and mortgage of Peter Zigmont, which was executed by said Peter Zigmont on the-day of-, 19 — . to the American Trust & Savings Bank, and that at the time of said sale to itself, as trustee, the real estate covered by said mortgage was not double the value of the unpaid balance due on said note, nor was the real estate covered by said mortgage as security for such note valued at a sura equal to the then unpaid balance on said note; that in the case of all three mortgages above set forth the same were assets of the First National Bank & Trust Company, having been acquired by it when it purchased the assets of the American Trust & Savings Bank.
3. That there are items of accounting contained in the former reports of said First National Bank & Trust Company, trustee, and the reports previously filed by it and its predecessor, the American Trust & Savings Bank, which should be investigated by the court and which will require the opening up of said accounts for investigation and proof.”
On October 14, 1935, O. L. McKinney, upon his application, waa appointed guardian ad litem for *252 the following minors: Peter Quinn, aged twelve years; Douglas M. Dimond, aged thirteen years, and Christopher G. Dimond, aged nine years, and was made party to the exceptions and granted leave to file exceptions for said minors, and thereupon adopted the exceptions and supplemental exceptions heretofore set forth.
Ellen L. Bushnell died October 26, 1918, and her will was admitted to probate October 31, 1918, and recorded in Will Records, Vol. 25, Page 378, of the Will Records of Clark County, Ohio.
The inventory and appraisement were filed November 16, 1918, and included 346 shares of the common stock of the First National Bank of Springfield. Ohio.
On June 3, 1920, the first and final account in the Ellen L. Bushnell estate was filed, and the order of distribution shows securities, cash and property distributed to John L. Bushnell, trustee, valued at $239,942.11.
A supplemental account was filed April 12, 1922, showing receipts
from tax refund, with an additional disbursement to the trustee, of $2,562.16, thus making the total distribution to John L. Bushnell, trustee, $242,504.27.
The trust provisions of the will of Ellen L. Bushnell, deceased, are Item Seventh, and read as follows:
“Item Seventh: All the rest of my property, both real and personal, not hereinbefore specifically devised or bequeathed, I give, devise and bequeath as follows:
One-third (1/3) to my son John L. Bushnell, his heirs and assigns, absolutely and in fee simple; one-third (1/3) to my daughter, Fannie B. McGrew; her heirs and assigns, absolutely and in fee simple; the remaining one-third (1/3) to my son John L. Bushnell, in trust for the exclusive use and benefit of my daughter, Harriet B. Dimond, during the period of her natural life. It being my will that the one-third of my estate, together with any special bequests of money or other property (excepting jewelry or personal belongings and the annuity hereinbefore described) devised and bequeathed to my daughter Harriet B. Dimond shall be paid by my Executors to my son John L. Bushnell, to be held by him in trust for the sole use and benefit of my said daughter, Harriet B. Dimond, during the term of her natural life, and at her death said trust shall terminate, and said property, whether real or personal, shall vest in the children of said Harriet B. Dimond, to be divided among said children, share and share alike, the children of any deceased child to take his or her parent’s share. I direct said trustee to hold my securities which he may receive from my estate as the share of my daughter, Harriet B. Dimond, and to pay to her during her natural life the net income and profits resulting therefrom, after paying all charges and expenses of said trust, including the taxes due thereon, and I give the said trustee the right to sell, at public or private sale, if in his judgment such action would be for the best interest of said trust, any part of said trust property or securities, and invest the same in the manner provided by law. Should the said John L. Bushnell fail to qualify as such trustee, or in the event of his death or resignation from such trust, his successor shall be appointed by the Probate Court of Clark County, Ohio, and shall have all the powers herein granted to the said John L. Bushnell.
*253 I desire my Executors to sell the homestead property on East High Street, together with the stable and garage equipment, automobiles and carriages, the proceeds of such sale to become a part of my estate and be distributed as indicated in this item of my will.”
Item Eighth of the will has some connection with Item Seventh, and reads as follows:
“Item Eighth: I hereby give to my son, John L. Bushnell, the right and privilege to purchase all my stock in the First National Bank of Springfield, Ohio, at the market value thereof. Should the said John L. Bushnell not desire to so purchase same, then said stock shall be distributed as hereinbefore specified in ITEM SEVENTH OF THIS MY LAST WILL AND TESTAMENT.”
A substantial portion of the trust estate consisted of preferred and common stocks.
On April 17, 1900, the following instrument was executed by Harriet B. Dimond, Asa B. Dimond, Douglas Dimond and Henrietta Dimond, which was later filed in the records of the Probate Court—
“April 17, 1920.
The undersigned, HARRIET B. DIMOND, beneficiary for life of a certain interest in the Estate of Ellen L. Bushnell, bequeathed and devised in trust to John L. Bushnell, Trustee, and ASA B. DIMOND, DOUGLAS DIMOND AND HENRIETTA DIMOND, the three last named persons being the children of said Harriet B. Dimond and the only persons entitled to a remainder in said trust estate, DO HEREBY AGREE with JOHN L. BUSHNELL, as said Trustee, that inasmuch as a large portion of the securities of said estate, as delivered to said Trustee, consist of Ohio industrial preferred stocks of good grade issued by companies of strong financial standing, said stocks being non-taxable by the State of Ohio in the hands of John L. Bushnell, Trustee, and inasmuch as the undersigned beneficiaries desire to obtain securities of a similar grade, non-taxable in Ohio, and bearing a similar rate of return, the said HARRIET B. DIMOND, ASA B. DIMOND, DOUGLAS DIMOND and HENRIETTA DIMOND, do hereby authorize JOHN L. BUSHNELL, as Trustee, to invest any cash balances which now or may hereafter be in his hands in preferred stocks of Ohio corporations of equal financial standing and earning capacity as those corporations in which Ellen L. Bushnell had made investments and similar in grade and quality to those preferred stocks now in the hands of John L. Bushnell as such Trustee, and for the purposes of securing Ohio non-taxáble securities and a larger return afforded by such preferred stocks, do hereby waive the requirements of the laws of the State of Ohio with reference to the investment of Trustee’s funds and agree to indemnify and save harmless the said John L. Bushnell, as Trustee, by reason of his investment of present cash balances or future accumulations in cash in such Ohio preferred stocks.
IN WITNESS WHEREOF, the said HARRIET B. DIMOND, ASA B. DIMOND, DOUGLAS DIMOND AND HENRIETTA DIMOND have hereunto set their hands this seventeenth day of April, 1920.
Harriet B. Dimond
Asa B. Dimond
Douglas M. Dimond
Henrietta Dimond.”
*254 During the period from the date of the above instrument to the filing of his first and final account, John L. Bushnell, trustee, acquired other common and preferred stocks.
On September 23, 1924, John L. Bushnell, trustee, resigned and filed a first and final account. This account contained a statement of the investments and showed that during his administration as trustee 102 shares of the First National Bank had been exchanged for 122 shares of the stock of the American Trust & Savings Bank, thus leaving in the estate 244 shares of First National Bank stock and 122 shares of American Trust and Savings Bank stock.
At the time of the resignation of John L. Bushnell, trustee, an agreement was entered into, dated September 15, 1924, between Harriet B. Dimond, the life tenant, Asa B. Dimond, Douglas M. Dimond and Henrietta D. Quinn, remainder men, John L. Bushnell, trustee, and the American Trust and Savings Bank. The agreement provided in substance as follows:
“FIRST: That they approve, ratify and confirm the investments and reinvestments made by said Bushnell as shown in the First and Final Account, dated September 5th, 1924, and filed in the Probate Court of Clark County, Ohio; such investments or reinvestments as made not having been heretofore approved, by agreement being hereby specifically accepted and approved as a part of the assets of said trust.
SECOND: That said beneficiaries consent, approve and ratify the item covering the charges for commission and expenses as such trustee by John L. Bushnell amounting to $2670.49, as set forth on page 12 of said account.
THIRD: It further appearing that some of the vouchers for disbursements made by said John L. Bushnell are not available for filing with the account, the approval of said account by the Probate Court without the submission of such vouchers is hereby requested and approved by said beneficiaries.
FOURTH: The beneficiaries request the Probate Court of Clark County, Ohio, to accept the resignation of John L. Bushnell as Trustee and to appoint THE AMERICAN TRUST AND SAVINGS BANK OF SPRINGFIELD, OHIO, as his successor without bond, and the said beneficiaries do agree with the said The American Trust and Savings Bank of Springfield, Ohio, that it may accept the securities and assets of the estate as shown in said final account of John L. Bushnell, dated September 5, 1924, in the statement of the investments and reinvestments set forth therein, and shall not be chargeable with the par or market value of said securities, nor shall said Bank as Truste'e successor to John L. Bushnell, be required to dispose of said securities Unless requested in writing by all the beneficiaries hereto; it being the purpose and intent to this agreement to permit and authorize the existing Trustee to accept the said assets as they now stand without any responsibility as to kind or quality thereof or whether same comply with the laws of the State of Ohio in the matter of investment of trust funds or otherwise.
It being understood, however, that said The American Trust and Savings Bank as Trustee shall not be expected or required to invest said trust fund or pay paru thereof in similar securities, but shall conform to the laws of Ohio and the orders of the Probate Court as *255 to investments authorized for .trust funds.”
This agreement was filed in the Probate Court of Clark County on September 23, 1924, and is referred to in the order entered on the •same date accepting the resignation of John L. Bushnell as trustee, and appointing The American Trust and Savings Bank as successor trustee.
These securities as shown on the receipt and inventory filed by The American Trust and Savings Bank, as trustee, December 22, 1924, show the inventory value to be as follows:
Cash ___________________$ 22630.32
Estimated value of securities ___________ 201000.00
Total ___________________$223630.32
Among the foregoing securities appear the following common and preferred stocks:
282% Shares, common, International Harvester Co.
100 Shares, preferred, International Harvester Co.
50 Shares, 3% preferred, Robbins & Myers Co.
67 Shares, 7% preferred, Robbins & Myer,^ Co.
4 Shares, common, New York Central Railroad.
50 Shares, preferred, Miller Improved Gas Engine Co.
18 Shares, 7% preferred, Pure Oil Co.
100 Shares, 8% preferred, Pure Oil Co.
10 Shares, 6% preferred, Springfield-Xenia Ry. Co.
9 Shares, common, Springfield-Xenia Ry. Co.
50 Shares, Thomas Mfg. Co.
40 Shares, Preferred, Westcott Motor Car Co.
122 Shares, common, American Trust & Savings Bk., Springfield, Ohio.
244 Shares, common, First National Bank, Springfield, Ohio.
176, Shares, common, First National Bank, Cincinnati, Ohio.
On January 10, 1927, the American Trust and Savings Company, as trustee, filed its first account. This account was duly settled on February 19, 1927, by order of the court.
This account shows the purchase by the trustee, on November 19, 1925, of Land Trust Certificate of the City National Bank Building of Omaha, Nebraska, in the principal amount of $5000.00, which is one of the investments excepted to. This investment appeared in subsequent accounts Nos. 2, 3, 4 and 5. Each of the accounts was settled and approved by the Probate Court. It is claimed that such settlements and approvals constituted an action of the Probate Court approving the listed investments. Of course, account No. 5 was excepted to, specifically objecting to this particular item of investment.
On October 24, 1927, the First National Bank and Trust Company of Springfield, Ohio, filed an application in the Probate Court setting forth the merger of the First National Bank, the American Trust and Savings Bank and the Farmers’ National Bank of Springfield, Ohio, into the First National Bank and Trust Company, that the First National Bank and Trust Company duly qualified to act in trust capacity and under the provisions of the merger had succeeded to all of the property rights, title and interest of The American Trust , and Savings Bank, and prayed that it be substituted in *256 the name of The American Trust and Savings Bank as trustee; and on the same day there was entered an order declaring that The First National Bank and Trust Company be vested with all of the authority, power and. rights of The American Trust and Savings Bank, as trustee.
Shortly thereafter 244 shares of The First National Bank stock, and 122 shares of The American Trust and Savings Bank stock were surrendered and a new certificate for 366 shares of First National Bank and Trust Company was issued in lieu thereof to The First National Bank and Trust Company, as trustee.
On September 13, 1928, The First National Bank and Trust Company, as trustee, filed its second account, which was duly settled by order of the court on November 3, 1929.
On November 1, 1929, the trustee filed his application in court for authority to exchange 366 shares of stock of The First National Bank and Trust Company for 2196 shares of BancOhio Corporation, being at the rate of six shares for one, and on November 2, 1929, the entry was filed, authorizing the trustee to make the exchange.vThis entry was journalized and appears in the final record, Vol. 50, page 29.
The exceptor appellants question this proceedings, which will be referred to later.
On October 6, 1930, the trustee filed its third account, which was duly settled by order of the court on November 26, 1930. To this account, as to all subsequent accounts, was attached a list of the securities and other investment including the above referred to 2196 shares capital stock of BancOhio Corporation.
On June 6, 1930, the trustee acquired from its investment department, a note and mortgage of John C. and Elizabeth K. Wickham, totaling $10000.00, and bearing interest at 6%%. The exceptions specifically include this item of investment, principally upon the ground that it discloses self-dealing between the trustee and the same trustee bank. This matter will be referred to later.
On September 24, 1932, the trustee filed its fourth account, which was duly settled by order of the court on October 27, 1932. This account, as did all the others, contained a list of investments as of the date of the filing of the account. It included the Land Trust Certificate of the City National Bank Building of Omaha, Nebraska, settled and approved in the first, second and third accounts; 2196 shares of BancOhio stock, received in exchange and shown and approved in the third account; also the Wickham mortgage, shown and approved in the third account.
On December 31, 1934, the trustee filed its fifth and final account, to which these exceptions have been filed. On or about this same date the bank trustee tendered its resignation, for* the reason that it was retiring from the trust business.
On January 17, 1935, S. A. Bowman, of Springeld, Ohio, was duly appointed as successor trustee.
On March 31, 1935, S. A. Bowman, as successor trustee, filed an inventory, listing all the securities and investments contained in the bank trustee’s list of' investments attached to its fifth and final account, and including the investments to which these exceptions relate.
*257 The exceptions were heard initially by the Probate Court of Clark County, and after a complete hearing and record the Probate Judge, on October 8, 1938, rendered a written opinion on all questions involved in the case and overruled all oí the exceptions of the exceptors and approved the fifth and final account of the First National Bank and Trust Company as trustee.
Thereupon an appeal was -duly taken by the exceptors to the Common Pleas Court of Clark County, Ohio, where the matter was heard de novo, under a stipulation to present the transcribed evidence taken before the Probate Court, supplemented by such additional testimony as the parties desired to present. Some additional testimony was presented on behalf of the trustee, S. A. Bowman.
No new issue was presented in the Common Pleas Court.
After hearing the Common Pleas Court rendered an oral opinion, overruling all of the exceptions and affirming the judgment of the Probate Court. The oral opinion of the Common Pleas Court was not transcribed and it is therefore not available to us.
Within proper time. S. A. Bowman, successor trustee, gave notice of appeal on questions of law, thereby lodging the case in our court.
The exceptions as filed originally in the Probate Court included other investments in the nature of Clark County real estate mortgage investments, in the total amount of something over $30,-000.00. The specific objection to these investments was that they were purchased by the bank trustee from its own investment department. Since the filing of the exceptions in the Probate Court and before the case reached our court, all of these mortgages with the exception of the Wickham mortgage had been paid off in full, and the Wickham mortgage reduced to approximately $8,050.00. Necessarily these investments which have been paid off are no longer involved, excepting that appellants urge that the evidence relative thereto is pertinent as showing a plan of dealing in violation of law. We think the evidence may properly be considered upon this theory. Bbwever, the only exceptions remaining for consideration would be the following:
1. Exception to Land Trust Certificate of City National Bank Building of Omaha, Nebraska;
2. Exception to mortgage from John C. Wickham;
3. Exception to acquisition and exchange of 366 shares of First National Bank stock for 2196 shares BancOhio stock .and the retention thereof.
Counsel for the respective parties have presented very exhaustive briefs. We are impressed with their thoroughness, conciseness and legal reasoning. The reading and re-reading of some 300 pages of' briefs, over 400 pages of record and a volume of exhibits have made the determination of this, case very laborious. We might add', to this the fact that more than 150 citations of authorities are presented. We do not pretend to say that we have read all the cited cases in their entirety, but we have carefully examined all Ohio cases, and so much of citations from other jurisdictions as was necessary to a complete understanding of the principles announced.
We now take up in order the three exceptions above referred, to—
*258 Exception to Land Trust Certificate on City National Bank Building, Omaha, Nebraska.
Counsel for appellants in.their brief make the statement that this certificate was purchased by the trustee from its own banking department.
We are unable to find any supporting evidence for this statement. On the contrary, the only evidence on the question discloses that this certificate was not purchased from the bank, and therefore the question of self-dealing is not involved. This certificate, in the amount of $5,000.00, was purchased November 19, 1925, by The American Trust and Savings Bank as trustee. It represented an undivided 5/1000 part of the equitable ownership in the fee simple title of the real estate and building owned by the City National Bank of Omaha, Nebraska. At the time of the investment §710-166 GC was in existence. The pertinent portion of this section reads as follows:
“A trust company may invest in or loan its trust funds upon the securities, bonds and other interest bearing obligations enumerated in sections 111, 112 and 140 of this act, but subject to all limitations as to the amount of the investment or loan therein or thereon as provided by law, and in stocks and bonds of corporations when authorized by the affirmative vote of the board of directors, or of the executive committee of such trust company.”
Section 140 referred to in the above §710-166 GC, will be found in the Code volume as §710-140 GC, subsection D thereof, and reads as follows:
“Ground rents of certificates of participation or beneficial ownership in improved lands under lease for a period of not less than twenty-five years from the date thereof, and conditioned that the lessee shall pay all taxes and assessments thereon, and keep and maintain said premises in full and complete repair, with insurance in an amount equal to the insurable value of the improvements thereon, provided that the aggregate amount of such rents or certificates shall not exceed the value of the land; nor sixty per cent of the total value of the land and improvements, * *
The above sections were enacted in 1919 (108 Ohio Laws, 166), and remained in the then form until 1937. The evidence establishes that this investment contained all the requisites to make it a legal trust investment under the above sections.
The Supreme Court of Ohio, in the case of In Re, Estate of Binder, 137 Oh St 26, had under consideration investments of this character, and on page 43 of the opinion, Hart, J., refers to the section authorizing trustees to invest trust funds in land trust, certificates.
Again, in the case of In re, Trusteeship of Stone, 138 Oh St, 293, Zimmerman, J., delivering the opinion, on page 296, in the first paragraph, refers to the practice of trust companies in Ohio investing funds of trust estates under their control in what are denominate land trust certificates—
“Ipso facto investments of that kind were then lawful. These certificates represented an undivided interest in the equitable ownership of real property, legal title to which is held by a trustee for the benefit of the certificate holders.”
*259 Under the state of the record we have no difficulty in determining that the exception as it relates to the land trust certificate was properly overruled.
—2—
“We now take up the exception to investment in mortgage of ; Johíi C. Wickham.”
■ We have some doubts as to whether appellants are seriously objecting* to this investment. We are led to this conclusion from statement on page 9 of appellants’ brief, wherein counsel in substance say that the principal error complained of involved the sale of 366 shares of National Bank stock and the purchase of 1296 shares of BancOhio stock. Also on the closing page of appellants’ brief, request is made that we sustain the exceptions and surcnarge the Trust Company in the sum of $94,428.00, with interest, by reason of the claimed illegal investment in the land trust certificate. No reference is made to the Wickham mortgage. However, in the reply brief, on the last page, in the last paragraph, appellants state that the bank trustee should be surcharged with the sum of $94,428.00, with interest, by reason of the BancOhio Corporation investment, “and that the same procedure should be followed in the case of land trust certificate and the Wickham mortgage.”
There should be no question under the record that this mortgage was an investment authorized to be made under §§710-111, 710-112, 710-140, and 710-165 GC. Paragraph K of §710-111 GC, designates legal investments as “bonds or notes secured by first mortgage on improved real estate as defined in Section 113 hereof not more than 60% of the value thereof, * *
Section 710-113 GC in substance defines improved real estate as meaning land upon which buildings have been erected suitable and intended to be used for residence, business or other purposes, etc.
The real estate covered by the Wickham mortgage fully qualifies under the above provisions of the Code. This investment was made on June 6, 1930, for the sum of $10,000.00, that being the face amount of the mortgage at that time. It bore interest at the rate-of 6%%. The purchase was authorized by the Trust Committee of the Board of Directors, and later the Board of Directors approved the action of the Trust Committee. Prior to the transfer of the-mortgage to S. A. Bowman, the present trustee, the balance of thejnortgage was $8,050.00. This mortgage was originally held by the bank trustee, and the sale was made from the bank’s investment department to its trustee. The record shows that the bank made no profit out of this sale. This investment was shown in both the 3rd' and 4th accounts of the trustee, which were approved and settled-, by the Probate Court.
The only question giving us concern is the fact that the sale was. from the bank, which was also the-trustee. This constituted self-dealing, and is frowned upon by the law regardless of fair dealing or-the desirability of the investment; and involving no loss to the trust. This seems to be a harsh rule, but. courts in all jurisdictions, including Ohio, adhere to the doctrine upon the theory that self-dealing means conflicting interest and divided loyalty. Our Supreme Court, has so stated in the case, In re, Estate of Binder, 137 Oh St 27, and. also in the case of In re, Trusteeship of Stone, 138 Oh St 292.
Syllabus 7 of the Binder case,, supra, reads as follows:
*260 “A trustee may not engage in ,self-dealing, and may, therefore, neither invest money left with him in trust in securities in which he is interested by way of commission, promotion or profit, nor sell to himself as trustee his individual property if property in which he has a-personal or beneficial interest. In such cases, it is immaterial that he acts in good faith in purchasing the property for the trust and that he pays a fair consideration therefor.”
Counsel for appellees urge that the fact that this mortgage was listed as an investment in the 3rd and 4th accounts, which were later approved and settled by the Probate Court, constituted an approval of the investment by the Probate Court, as authorized under §11314 GC. This section of the Code designates the particular class of investments that a trustee may make, and then adds this language—
“Or any such other securities as the court having control of th.e administration of the trust approves.”
Our court had under consideration the quoted portion of the above section in at least three cases: In re, Trusteeship of Tischer, 46 Oh Ap, 405; Warner v Hoffman, 18 Abs, 403; and Schick v Kroger, 38 Abs, 389.
In these three cases we held that the settlement of a fiduciary’s account wherein were listed his investments, constituted an approval of such investments as provided tinder the above quoted portion of §11314 GC.
The Court of Appeals of Columbiana County, in the case of Marks, Guardian v Marks, arrived at the .same conclusion as did our court.
The Warner case, supra, and the Marks case, supra, were sought to be certified to the Supreme Court, but certification was denied, 132 Oh St 136.
It is urged that the Supreme Court in the case of Home Savings and Loan v Strain, 130 Oh St 53, inferentially overruled, our holdings. This decision by the Supreme Court preceded our opinion in the Schick case, supra. In the latter ease we determined that the Supreme Court’s decision in the Strain case, supra, did not inferentially reverse our holdings in the Warner case, supra.
However, the instant case is to be distinguished from our former decisions in that the question of self-dealing was not involved, as it is in the instant case. The Probate Court in approving the investment might now know that self-dealing was involved. This element presents an added question and not concluded by the fact that the Probate Court settled the account and thereby approved the investment.
*261 *260 Counsel for appellees in his brief states that the trustee bank was willing at any time to take back this investment, could it have been done without risk of imputation of fraud in such act on its part, and further offered to the present trustee to do so under such conditions. Of course, this does not appear in the record. We are inclined to the view that this is a very high class investment, yielding an income of 614%, and one that the present trustee might desire to hold but for the feeling that may be engendered through this litigation. We hesitate to make a finding against the bank trustee, but will be compelled to do so unless the *261 plan of adjustment which we now suggest can not be carried out. Since counsel for appellees state that the former bank trustee is willing to take this investment, which we assume would be at its face value plus accrued interest, we suggest that if perchance the trustee does not desire to hold it, that before the entry is presented in this case, this mortgage seeurity be tendered back and upon pay\ment of the full face value thereof, plus accrued interest, all controversy on this branch of the case iwill be terminated. If this plan of settlement can not be effected, then we order that the present trustee proffer a return of this mortgage security to the former bank trustee and upon the payment of the face value thereof, plus accrued interest, that he properly endorse and deliver such security to the bang. If for any reason the bank can not comply with this order, then the bank will be surcharged with the face value of the investment, plus accrued interest.
—3—
We now consider the exception involving the exchange of 366 shares of First National Bank stock for 2196 shares of BancOhio stock.
It is very clear and positive that bank stock is not listed under any of the Code sections as a sanctioned investment by a fiduciary. The law is very definite that regardless of statutory sanction, the creator of a trust (in this case the will of Ellen L. Bushnell) might legally designate the kind and character of investments to be made; the court having control of the administration of the trust (in this case the Probate Court) has the power under §11214 GC, to authorize investments in securities other than those specifically sanctioned; and to a limited extent beneficiaries under the trust may consent to investments other than those sanctioned under the statute-
Under Item Seven of the will of Ellen L. Bushnell, she designated her son, John L. Bushnell, as trustee, and, among other things, directed the trustee to hold any security which he may receive from her estate and pay the net income therefrom to her daughter, Harriet B. Dimond; she also provided in the will that the trustee should have a right to sell at public or private sale, any of the securities coming into his hands if, in his judgment, such action would be for the interest of the trust, and invest the same in the manner-provided by law. It was also provided under this clause of the will that in the event John L.' Bushnell failed to qualify or upon his death or resignation from such trust, his successor should be appointed by the Probate Court of Clark County, Ohio, and shall have all the powers granted to the said John L. Bushnell.
It is conclusively shown that a major portion of the assets coming into the hands of John L. Bushnell as trustee, was not such, that a trustee might acquire or hold, except under authority of Mrs. Bushnell’s will, authorization by the Probate Court or sanction of the beneficiaries under proper-showing.
It is conceded that under the provisions of the will of Ellen L-Bushnell, the trustee had the legal right to hold all the investments coming into his hands from his mother’s estate. Included in the list as shown by the inventory were *262 346 shares of the common stock of the First National Bank and Trust Company of Springfield, Ohio. This stock was inventoried at a valuation of $180.00 per share, or a total of $62,280.00.
On April 17, 1920, the beneficiaries under the trust executed an instrument which was later filed in the Probate Court of Clark County, Ohio, among other things reciting the fact that a large portion of the securities of said estate as delivered to the trustee consisted of Ohio industrial preferred stock of good grade, issued by companies of strong financial standing, and inasmuch as the undersigned beneficiaries desire to obtain securities of similar grade, bearing a similar rate of return, said beneficiaries authorize John L. Bushnell, as trustee, to invest any cash balances which now or may hereafter be in his hands in preferred stocks of Ohio corporations of equal financial standing and earning capacity, similar in grade and quality, and for the purpose of securing a larger return. The instrument further provided that the fiduciaries waived all requirements of the laws of the State of Ohio with reference to the investment of trust funds and agree to indemnify and save harmless the said trustee by reason of any investments in Ohio preferred stocks. »
John L. Bushnell continued to act as trustee until September 23, 1924, when he filed his first and final account and tendered his resignation.
His final account showed that 102 shares of First National Bank •stock had been exchanged for 122 shares of the stock of The American Trust and Savings Bank, thus leaving in the estate 244 shares of First National Bank stock and 122 shares of American Trust and Savings Bank stock. At the time >cf John L. Bushnell’s resignation as trustee an agreement had been entered into, under date of September 15, 1924, between all the beneficiaries, the trustee and The American Trust and Savings Bank. Among other things, it was stated that the beneficiaries approved, ratified and confirmed investments and re-investments made by John L. Bushnell, trustee, as shown in' his first and final account. The fiduciaries requested the Probate Court of Clark County to accept the resignation of John L. Bushnell, as trustee, and appoint The American Trust and Savings Bank, of Springfield, Ohio, as his successor without bond, and the fiduciaries further agreed with The American Trust and Savings Bank, of Springfield, Ohio, that it might accept the securities and assets of the estate as shown in said final account of John L. Bushnell, and should not be chargeable with the par or market value of said securities, nor should said bank as successor trustee, be required to dispose of such securities unless requested in writing by the beneficiaries hereto, it being the purpose and intent of the agreement to permit and authorize the existing trustee to accept the said assets as they now stand without any responsibility as to kind or quality, or whether same complied with the laws of the State of Ohio in the matter of investment of trust funds or otherwise. The concluding paragraph reads as follows:
“It being understood, however, that said The American Trust and Savings Bank as Trustee shall not; be expected or required to invest said trust fund or any part thereof in similar securities, but shall conform to the laws of Ohio and the orders of the Probate Court as to investments authorized for trust funds.”
*263 This agreement was filed in the Probate Court of Clark County on September 23, 1924.
The inventory value of the trust funds turned over by Bushnell, trustee, to the successor bank trustee, was $223,630.32, consisting of cash, $22,630.32, and securities, $201,000.00.
The securities received by the \bank trustee v/ere with very few exceptions not such as are specifically sanctioned under any provisions of the Code.
The American Trust and Savings Bank, trustee, filed its first account on January 10, 1927, and the same was settled on February 19, 1927. The account contained a list of all securities held by the trustee.
On October 24, 1927, the First National Bank and Trust Company of Springfield, Ohio, filed an application in the Probate Court, setting forth the merger of the First National Bank of Springfield, Ohio, The American Trust and Savings Bank and the Farmers’ National Bank of Springfield, Ohio, into the First National Bank and Trust Company. On the same day the Probate Court entered an order declaring that the First National Bank and Trust Company, through the merger, became the trustee, invested with all the authority, power and right of The American Trust and Savings Company. Shortly thereafter 244 shares of the First National Bank stock and 122 shares of The American Trust and Savings Bank stock were surrendered for 366 shares of First National Bank and Trust Company stock which was issued in lieu thereof to the First National Bank and Trust Company as trustee.
Some question is raised in the brief of counsel for appellants as to the legality of this transfer of stock through the merger of the three Springfield banks. The question was not specifically raised in the exceptions nor any reference made thereto in the evidence,, other than the historical fact.
As far as we are able to find this matter has not been before any Ohio courts and the decisions in other jurisdictions are not uniform. However, we adopt the principle as stated in Restatement of the Law of The American Law Institute on Trusts, Section 231, Subsection “f”, at page 677, as, follows:
“f”. Merger. If the trustee holds, shares of a corporation which he can properly retain as a part of the trust property, and the corporation is merged into or with another corporation, he can properly receive and retain new shares issued in exchange for the old shares, * * * (2) if the new shares are substantially equivalent to the old shares, unless by reason of change in character of the enterprise as a consequence of the merger, the trustee would not act prudently in retaining ’ the new shares.”
The First National Bank and Trust Company, as trustee, regularly filed accounts in the Probate Court showing receipts and disbursements and listing with each account its investments. All were-approved and settled by the Probate Court within statutory time after filing, except the fifth and. final account. This fifth account, was likewise approved at the time that the Probate Court overruled' the exceptions.
On November 1, 1929, the bank trustee filed its application in court for authority to exchange 366,- *264 .shares of stock of the First National Bank and Trust Company for 2196 shares of the stock of BancOhio Corporation, being at the rate of six shares for one. On November 2, 1929, an entry was filed, authorizing the trustee to make the exchange and on the same day was duly journalized in the proper records of the Proabte Court.
This proceeding is attacked by the exceptors in many ways.
First, it is claimed that it was in violation of the will of Ellen L. Bushnell, and also the agreement with the fiduciaries through which the bank trustee was appointed. It is argued that the portion of the will which authorizes the trustee to invest funds “in the manner provided by law,” should be given a construction as only including such investments as are specifically sanctioned by the provisions of the Code. We are unable to follow this argument.
It is a well recognized principle that testators in executing wills are presumed to know the law, and therefore we approach this question with the conclusion that Mrs. Bushnell presumptively knew ar the time she executed the will the provisions of §11214 GC. ,
This is a very old legislative enactment and is the general authority for making investments by fiduciaries. It gives legislative sanction to certain securities for investment by fiduciaries, but in the closing paragraph thereof is stated: “or such other securities as the •court having control of the administration of the trust approves.”
This means just what it says; and that is that if the court having control of the administration of the trust approves of certain investments, then such investments when made are made according to law.
The agreement between the beneficiaries, the retiring trustee, John L. Bushnell, and the successor trustee, The American Trust and Savings Bank, states that the successor trustee in making investments “shall conform to the laws of Ohio and the orders of the Probate Court as to investments authorized for trust funds.” Whatever added or limited authority may be given under this agreement would embrace the provisions of §11214 GC.
The proceedings before the Probate Judge in acting upon the trustee’s application is also questioned. It appears from the record testimony that the entry authorizing the exchange for BancOhio stock was not signed by the judge.
Rowe, Trustee v Aetna Casualty & Surety Co., 36 Abs 36.
In contemplation of law entries ai-e not supposed to be signed. The Clerk, as the clerical officer of the court, is presumed to enter the court’s judgments in the proper record. The Probate Judge, being ex-officio clerk of his own court, performs this service, either in person or through the authorized deputies or employees. However, in practice entries are prepared and filed, usually by the attorneys in the case. Some courts have a rule that no entry shall be filed or recorded unless signed by the trial judge. This is a very good practice as a safety measure against improper entries being recorded. The record in the instant case adequately supports the claim that the Probate Judge heard the application and authorized the judgment entry to be duly filed in the proper records of his office. In taking the testimony, the Probate Court was interrogated as to his recollection relative to this appli *265 cation. It is not surprising that he had very little personal recollection about the matter. It will be remembered that the incident occurred some ten years before the hearing.
Mr. Cory, Attorney for appellees, testified that he personally presented the application to the Probate Judge and talked it over with the Judge. Counsel for appellants point out that Mr. Cory was not so clear in his recollection of what transpired as to give any support to the claim that the Probate Court acted upon the application. Again we might say that it is not surprising that counsel would be unable to remember every detail of a conversation occurring ten years previously.
It is a well recognized principle ■of law that courts speak through their records, and the record in the instant case shows authorization for the trustee to acquire the BancOhio Corporation shares of stock. Every presumption favors the court records, and unless clearly shown to be improper, they may not be questioned.
Other questions were raised, which we do not consider necessary to specifically discuss, but close this branch of the case with the statement that the record adequately supports the claim that the investment in BancOhio stock was made under the authority of the Probate Court.
A further question raised is that this exchange through which the trustee acquired BancOhio stock was self-dealing, and presents conflict of interest. We are unable to find that there was self-dealing. It is true that BancOhio purchased a controlling interest in the stock of the trustee bank. The proposition of the BancOhio to acquire stock of the First National Bank and Trust Company, of Springfield, Ohio, in exchange for its stock on the basis of six for one, had the sanction of the Board of Directors of the Springfield bank. The Springfield bank notified its stockholders by letter that it advised the transfer. Probably about 90% of the stockholders made the exchange. The Springfield bank was not merged into the BancOhio, but it retained its entity. The Board of Directors exchanged most of their stock, but retained 10 shares as necessary to keep them qualified to be a director. The Trust Committee of the Board of Directors of the Springfield bank recommended that the trust stock be exchanged for. BancOhio stock. The Board of Directors by board action adopted the recommendation of the Trust Committee. The record presents evidence of very careful consideration and thorough investigation by the Springfield bank before it sanctioned the deal. The inference of conflicting interest does not arise, but on the contrary, there was community of interest. If the transfer of stock on the basis of six for one was good for stockholders generally, it certainly would be good for the trust.
We think it obvious that the nationwide financial distress which followed shortly after this transaction and thereby depreciated all investments, had a major influence in the activities of the beneficiaries and the present trustee.
We quote from Bogart on Trusts, Vol. 3, page 1944:
In judging the reasonableness of the trustee’s investment, the court will not be affected by hindsight. It will endeavor to place itself in the position of the trustee at the time he made the investment and not to charge him with knowledge as to what has happened since the investment.”
*266 , Also from Judge Hart’s opinion, In re, Estate of Binder, 137 Oh St 35:
“Trust companies perform a great service in the business world and the law must not make the rules of conduct governing them sc onerous that they may not function, but it must demand that high sense of honor and measure of integrity which loyalty requires in carrying out the great responsibilities which trust companies voluntarily assume in representing others in a trust capacity.”
Complaint is made that the beneficiaries were not consulted relative to the acquiring of this BancOhio stock. We find nothing in the record indicating that they were consulted, but no legal obligation rested upon the trustee bank to so do. However, we find that at least one of the beneficiaries knew of the transfer about four months after it occurred. This particular beneficiary was connected with a brokerage firm in the East, and was familiar with the handling of securities. In fact, that was his business. Subsequently this same beneficiary was given power of attorney by the remaining ones to act for them on any and all matters involving the trust. He sent a telegram to the trust officers of the bank trustee suggesting the possible sale of BancOhio stock at 24. At the time of the transfer the stock was selling from 40 to 43. There is some evidence that the Telegraph Company may have made a mistake in transmitting the message and inserted the figures 24 instead of 34. The trust officers immediately answered this telegram, calling attention to incorrect information as to the price as at that time the bid was 35 and the asked price 37» The letter further requested what the beneficiaries desired, and stated that if it was still desired to sell proper papers would be made' up. This letter was never answered.
Complaint is further made that, the trustee acted improperly in retaining this stock after the transfer was made. Through the benefit of hindsight it is true that it would, have been better to have sold.
Dr. Tulloss, President of the' Trustee Bank, at the hearing graphically made a comparison of the BancOhio stock, its earnings and market price, with many other institutions, including three of the leading banks in New York City, some forty banks in New York, a number of outstanding industrial stocks, and disclosed that the BancOhio per unit had a better record than any of the others.
We now revert to the controlling situation, and that is that the Probate Court by duly journalized order, having authorized the investment, the exception as to BancOhio transaction must be overruled.
The judgment of the trial court will be affirmed, except as to the Wickham mortgage, and the affirmance will include this exception if adjustment is made along the lines suggested; otherwise the-judgment will be modified so as to conform to this opinion.
Costs adjudged against the appellants.
GEIGER, PJ., not participating. HORNBECK, J., concurs.